56 P.3d 1097

STATE of Arizona, Appellee,

v.

Lashon Elmerson PATTERSON,
Appellant.

No. 1 CA–CR 01–0392.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 7, 2002.

Janet Napolitano, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section, Greg A. McCarthy, Assistant Attorney General, and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Robert W. Doyle, Phoenix, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We address in this opinion the admission of evidence in response to a deliberating jury's question. We do so to provide guidance to trial judges when faced with a jury question requesting substantive information after evidence has closed and deliberations have begun.

¶ 2 We affirm the proceedings below.[1] We recite only those facts necessary to address the issue before us.

¶ 3 Lashon Elmerson Patterson ("appellant") was convicted of first-degree murder, attempted first-degree murder, and drive-by shooting. This was a gang shooting. The crimes took place on a residential street in Phoenix. The course of the car from which the shots were fired, the location of the victims, and the location of the witnesses all bore upon the issues before the jury.

¶ 4 Shortly after deliberations began, the jury requested a map of the area where the shooting occurred. Appellant objected, arguing that the evidence was closed but asserting no specific claim of prejudice. The trial judge noted that admission of the map during deliberations "is consistent with Supreme Court directives that courts should do whatever is appropriate to assist juries in reasonably reaching resolution of issues in a case." The trial judge also found there was no

---

1. Additional issues were raised on appeal. We affirmed the proceedings in the trial court as to those issues in a Memorandum Decision filed this same date, consistent with Arizona Rule of Civil Appellate Procedure 28(g).

prejudice to any party and the map would have been admitted had it been offered during trial. A one-page map was then admitted.

¶ 5 Trial courts have broad discretion in deciding whether to reopen a case and admit additional evidence. *State v. Dickens*, 187 Ariz. 1, 12, 926 P.2d 468, 479 (1996). A trial court "will not be considered to have abused its discretion [in granting a motion to reopen] unless the defendant has been prejudiced and ... to constitute prejudice it must appear that the defendant was deprived of a substantial right." *State v. Cota*, 99 Ariz. 237, 241, 408 P.2d 27, 29 (1965). We consider that the "purpose of permitting a party to reopen and present further evidence is 'to promote justice, not thwart it.' " *Dickens*, 187 Ariz. at 13, 926 P.2d at 480 (quoting *Cota*, 99 Ariz. at 240, 408 P.2d at 28).

¶ 6 Procedurally, our cases have applied the standard above to issues concerning the reopening of evidence in several situations. We have addressed reopening after the State has rested, but while the defense still has the opportunity to present evidence. *E.g. Dickens*, 187 Ariz. at 11, 926 P.2d at 478 (finding no error in allowing reopening after state had rested); *Cota*, 99 Ariz. at 240, 408 P.2d at 28 (same). Our cases also treat situations in which reopening was permitted after or during closing arguments but prior to jury deliberations. *E.g. State v. Walton*, 159 Ariz. 571, 581, 769 P.2d 1017, 1028 (1989) (finding no error in reopening after closing arguments but prior to jury deliberations); *State v. Favors*, 92 Ariz. 147, 149, 375 P.2d 260, 260–61 (1962) (same). *See also State v. Thomas*, 110 Ariz. 120, 130–31, 515 P.2d 865, 875–76 (1973) (allowing the state to reopen after the defense had rested). Neither we, nor the parties, however, have discovered Arizona cases in which reopening was al-

lowed after the jury had begun its deliberations.[2]

¶ 7 The trial court correctly noted that the admission of the map in this case, after deliberations had begun but in response to a specific question from the jury, involves the same issues that caused Arizona to revise its rules with regard to juries. In 1995, Arizona adopted rules that allowed juries to function more effectively. *See* Report of the Arizona Supreme Court Committee on More Effective Use of Juries, *Jurors: The Power of 12* (1994) (*"Power of 12"*). The new rules included a juror's right to ask questions. Ariz. R.Crim. P. 18.6(e). The new rules also provided guidelines for the trial judge to assist a jury at an impasse. Ariz. R.Crim. P. 22.4. They do not, however, directly address questions from a deliberating jury that is *not* at an impasse.

¶ 8 Some of the principal concerns prompting the rule changes were the "enforced juror passivity during trials and unacceptably low levels of juror comprehension of the evidence and of the court's instructions." *Power of 12*, 2. In this regard, Arizona's reform effort is consistent with those of others who attempt to make jury trials more effective and fair. *See* Douglas G. Smith, *Structural and Functional Aspects of the Jury: Comparative Analysis and Proposals for Reform*, 48 ALA. L.REV. 441, 555 (1997) ("A better informed jury is more likely to lead to a fair trial than one that is confused concerning the facts of the case."); William W. Schwarzer, *Reforming Jury Trials*, 1990 U. CHI. LEGAL F. 119, 145 ("We must escape the shackles of habit and tradition to make more effective use of juries.")

¶ 9 Among the options identified in dealing with a jury at an impasse, the comment to Rule 22.4 notes that the judge has the following options:

**2.** There is a substantial body of law from other jurisdictions that deals with this issue. *See* M.C. Dransfield, Annotation, *Propriety of Reopening Criminal Case in Order to Present Omitted or Overlooked Evidence, after Submission to Jury but Before Return of Verdict*, 87 A.L.R.2d 849 (1963). Because the issue at hand can be adequately covered by reference to the Arizona authorities we discuss herein, and because the out-of-state authorities turn generally on the same abuse of

discretion standard applicable in Arizona, we do not engage in a detailed review of that case law. We note, however, that when the request to reopen is based upon a question from the jury during deliberations, *e.g. Brown v. State*, 188 Ga.App. 282, 372 S.E.2d 838, 839 (1988); *Dyson v. State*, 328 Md. 490, 615 A.2d 1182, 1186–87 (1992), the analysis under Arizona law may well be different because of Arizona's unique rules pertaining to juries. *See* ¶¶ 7–9 *infra*.

giving additional instructions; clarifying earlier instructions; directing the attorneys to make additional closing argument; *reopening the evidence for limited purposes;* or a combination of these measures.

(Emphasis added.) Obviously, as the comment concludes, "the court might decide that it is not legally or practically possible to respond to the jury's concerns." Ariz. R.Crim. P. 22.4 cmt.

¶ 10 This case is a perfect example of a trial judge who appropriately exercised his discretion and substantively responded to a jury's question during deliberations. Although the jury was not at an impasse, *e.g.* Rule 22.4, the same considerations of appropriately assisting a jury—without prejudicing the rights of the parties—are applicable here: the trial judge should "fully and fairly respond," when possible. *Power of 12,* 118–19.[3] This exercise of discretion was consistent, too, with the Arizona cases pertaining to reopening of evidence in other settings. *See* ¶ 6, *infra.*

¶ 11 In this case, the jury had heard testimony regarding the movements of the car from which the victims were shot, the location of the shooting, and the locations of various witnesses to the event. Two aerial photographs of the scene had previously been admitted, as had computer generated graphics and hand drawings presenting overhead views of the area. The jury, however, simply wanted a map. The court expressly (and correctly) found that appellant would not suffer any prejudice by the admission of the map, and that the jury would have a better understanding of the layout of the various streets referred to during testimony if the map was admitted.

¶ 12 Thus, there was no error in the trial court's decision to reopen the case during deliberations and admit a map in response to the jury's request. Rather, the ruling further thered the policy of substantively responding to a deliberating jury's request when to do so would not prejudice the parties. It likewise furthered the principles pertinent to reopening of evidence when there is no prejudice. *Dickens,* 187 Ariz. at 13, 926 P.2d at 480 ("purpose of permitting a party to reopen ... is 'to promote justice, not thwart it' ") (citation omitted).

¶ 13 We affirm appellant's convictions and sentences.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and PHILIP HALL, Judge.

---

**3.** One of the recommendations of the *Power of 12* report was that "[t]he trial judge should fully and fairly respond to all questions asked and requests made by deliberating jurors concerning the instructions *and the evidence,* recognizing that the jurors are capable of defining their needs in deciding the case." *Power of 12,* 118 (emphasis added). The report goes on to note that "the failure of too many judges to fully and fairly respond to questions and requests from deliberating juries is well documented and is another major source of 'static' in jury comprehension." *Id.* Obviously, in responding, the trial judge must "avoid influencing the jury on the merits." *Id.* These considerations are all expressly applicable to a deliberating jury, whether it is at impasse or not. *Id.*