169 P.3d 641

STATE of Arizona, Appellee,

v.

David Charles FERNANDEZ, III, Appellant.

No. 1 CA–CR 05–1136.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 18, 2007.

Terry Goddard, Arizona Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Diane L. Hunt, Assistant Attorney General, Tucson, Attorneys for Appellee.

Dodge Anderson Mableson Steiner Jones & Horowitz, Ltd., by Jess A. Lorona, and Kesha A. Hodge, Phoenix, Attorneys for Appellant.

## OPINION

BROWN, Judge.

¶ 1 Defendant David Charles Fernandez III appeals his convictions and sentences on one count of first-degree murder and ten counts of attempted first-degree murder. Fernandez raises the following arguments: 1) the trial court abused its discretion and coerced the jury into reaching a verdict by ordering supplemental closing argument on premeditation; 2) the trial court erred as a matter of law in allowing the jury to determine whether offenses committed against several children under the age of fifteen were "dangerous crimes against children";[1] and 3) the trial court abused its discretion by refusing to instruct the jury on aggravated assault as a lesser-included offense of attempted first-degree murder.[2] For the following reasons, we affirm his convictions, but remand in part for resentencing.

## BACKGROUND[3]

¶ 2 Shortly before midnight on January 4, 2002, after drinking alcohol, smoking marijuana, and ingesting mushrooms laced with drugs, Fernandez started arguing with his girlfriend. He banged her head several times against a doorway, in full view of two children and several teenagers gathered on the balcony of a nearby second-story apartment. The two children lived at the apartment, and frequently "hung out" with their seventeen-year-old brother and his friends on the balcony, which was lit by a porch light and a nearby street lamp, and furnished with a couch. That night, someone on the balcony called the attention of the others to Fernandez' abuse. After the argument, Fernandez' girlfriend walked back to the apartment she shared with Fernandez, which was located a few doors down from where the altercation had occurred. Fernandez followed her into the apartment.

¶ 3 Between five and twenty minutes later, Fernandez returned to the area carrying an AK-47 rifle, and after saying, "what's up cuz" several times, and receiving a like answer, fired numerous rounds toward the group on the balcony. One shot killed the eleven-year-old boy who was leaning against the railing, and another shot paralyzed his fourteen-year-old sister, who had turned to go into the apartment and was standing in front of the door.[4]

¶ 4 Shortly after firing the shots, Fernandez approached a car entering the parking lot. The car's dome light was on, which allowed one of three children in the back seat to play a game. Fernandez tapped on the driver's side window, and after he was directed to the passenger side of the car, talked to the front-seat passenger through the open car door for a minute or two. Suddenly, Fernandez went around to the back of the car and fired numerous shots into the car, wounding the driver, the front-seat passenger, and two of the children. The three

---

1. The actual argument made by Fernandez is that the *jury* erred, as a matter of law, in finding that the offenses were dangerous crimes against children. We believe the issue is more appropriately framed as whether the *trial court* erred.

2. Fernandez raises five constitutional claims at the end of his opening brief but fails to provide any supporting argument or citation to authority. Accordingly, those claims are waived for purposes of our review. *See State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995).

3. We view the evidence in the light most favorable to sustaining the conviction. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

4. The State filed a notice of intent to seek the death penalty if Fernandez was convicted of the first-degree murder of the eleven-year-old child.

children in the car were all under the age of fifteen.

¶ 5 Fernandez testified that after the altercation with his girlfriend, he retrieved his father's loaded AK–47 rifle from his apartment and returned to the area near the balcony to defend himself after he thought one of the persons on the balcony said, "Let's get this dude," and "Let's get him," several times. He testified that he shot to the left and above the heads of the only two people standing on the balcony after he heard one of them say, "Let's smoke the fool." Fernandez knew that children lived in the apartment, but testified that he did not see any children on the balcony. He subsequently fired shots at the car because it nearly hit him and, when the door on the front-passenger side opened, he was afraid the people from the balcony were coming after him. Fernandez stated that he never looked inside the car before he fired the shots.

¶ 6 The jury returned a guilty verdict on one count of first-degree murder and ten counts of attempted first-degree murder, finding all the offenses to be dangerous and finding five of the offenses to be dangerous crimes against children. In the penalty phase of the trial, the jury found that Fernandez should be sentenced to life imprisonment on the first-degree murder conviction. The court sentenced Fernandez to natural life for the murder conviction, and lesser terms for each of the attempted murder convictions. Fernandez timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.01(A)(1) (2003), 13–4031 (2001) and 13–4033 (2001).

## DISCUSSION

### I. Supplemental Closing Argument

¶ 7 Fernandez argues that the trial court abused its discretion by ordering supplemental closing argument and ultimately coercing the jury into reaching guilty verdicts. He asserts that the supplemental argument allowed the State to "cure the deficiencies in its theory of premeditation." Additionally, he argues that the prosecutor misinformed the jury as to the distinction between first-degree and second-degree murder during the supplemental argument.

¶ 8 "Jury coercion exists when the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors, or when the trial judge encourages a deadlocked jury to reach a verdict[.]" *State v. Davolt*, 207 Ariz. 191, 213, ¶ 94, 84 P.3d 456, 478 (2004) (internal quotation marks and citations omitted). "What conduct amounts to coercion is particularly dependent upon the facts of each case." *State v. Roberts*, 131 Ariz. 513, 515, 642 P.2d 858, 860 (1982) (finding judge's inquiry into the numerical division of the impasse and comment on the large amount of evidence did not result in coercion); *State v. Lautzenheiser*, 180 Ariz. 7, 9–10, 881 P.2d 339, 341–42 (1994) (finding verdict was coerced when a judge ordered continued deliberation after a "hold out" juror was twice singled out in open court "as the person responsible for delaying the conclusion of the proceedings"); *State v. McCutcheon*, 150 Ariz. 317, 318–20, 723 P.2d 666, 667–69 (1986) (finding an implicit and improper message in the trial judge's repeated questions whether the jury could reach a verdict on one count against any defendant, when jury knew that trial judge was aware that two jurors believed that there was not enough evidence on all counts for both defendants). The trial court's response to a jury question is reviewed for abuse of discretion. *State v. Ramirez*, 178 Ariz. 116, 126, 871 P.2d 237, 247 (1994).

¶ 9 The jury trial in this case lasted eleven days. At the end of the first day of deliberations, the jury's foreperson sent a handwritten note to the court asking:

> Can we get an expanded definition of what "pre-meditation" is? Some of us are struggling with what constitutes pre-meditation. Or can you cite any other cases that would help us to understand the definition of pre-meditation?

The trial judge responded in writing to the jury, acknowledging receipt of the question on premeditation and informing the jurors that he and the lawyers would not be able to meet until the following morning at 10:30

a.m. and then he would respond to their question. He also suggested that the jurors continue their deliberations regarding "other issues and counts in the case." The judge e-mailed the jury's question to the attorneys, advising that if neither of them had "anything that we can give them [the jury] to expand or clarify the instruction, I may order supplemental argument on that point tomorrow morning." Defense counsel responded by e-mail that he objected to supplemental argument, suggesting that the jurors instead be told to follow the instructions they were given, and, "[m]ore specifically, the [jurors] should be told[,] should they not agree as to what premeditation is, then they cannot reach a verdict on first degree murder and attempted first degree murder and should proceed accordingly pursuant to the instruction." The prosecutor asked for the opportunity to further argue the concept, stating that "[t]he rules specifically allow for additional argument if the jury is hung up on a specific aspect of the case, and on behalf of the State I request that we be allowed to do that."

¶ 10 The following morning, outside the jury's presence, the trial judge reiterated his intention to order supplemental argument of no more than fifteen minutes per side, explaining that he did not think that he could add to the premeditation instruction "without unduly suggesting one way or another on how they decide the case." The prosecutor responded:

I think their question clearly suggests that they are at an impasse, that some of them have found premeditation on the charge of first-degree and some are not clear whether there is premeditation ... and I think the court is within its power and discretion, proper exercise of discretion, to order additional argument and I am prepared to go forward with that.

¶ 11 Defense counsel disagreed, noting that the jury had not asked for additional argument, and if the jurors had reached an impasse on premeditation, they should be instructed that "they are obligated under the instruction and the law to go to second-degree murder and attempted second-degree murder on all the counts in this case." The judge responded with his final ruling:

Okay. You are free to tell them that during your supplemental argument, and why I'm doing it is because these instructions, just the instruction part I think are[,] 31 to 32 pages long, and I think it would be helpful for counsel in their argument to give them a kind of decision tree. It's hard for lay people to follow sometimes.

As I said, I think it's appropriate to do some supplemental argument because it gives each side an opportunity to argue their side without the court directing them to particular instructions that might be deemed or viewed as directing the jury down one path or another. So I think this is a fair balance to approach, a fair balance on the way to do it.

All of the studies I read are that we give up on juries too easily and should give them assistance, and they need to make these types of decisions. And this is one way for them, one way for us to help them. So for those reasons I am going to allow the supplemental argument.

■ ¶ 12 The judge then informed the jury that "[r]eally, there's nothing I can add as far as a legal instruction on premeditation, but I thought it might be helpful for your deliberation to hear once again from the attorneys so they can give you some additional information or argument on premeditation." In the State's supplemental argument, the prosecutor argued that the evidence showed premeditation, giving hypothetical examples. Defense counsel did not lodge any objections to any specific portion of the prosecutor's supplemental argument.[5] De-

---

5. We find unpersuasive Fernandez' argument on appeal that the prosecutor misled the jury by implying that a "knee-jerk reaction" was sufficient to satisfy the requirement of premeditation. Because Fernandez failed to make specific objections to the State's supplemental argument, we review these claims for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19,

115 P.3d 601, 607 (2005). Fernandez has the burden of demonstrating that fundamental error occurred and that the error caused him prejudice. *Id.* at 568, ¶ 22, 115 P.3d at 608. We find no error, much less fundamental error, that prejudiced Fernandez. The prosecutor unambiguously conveyed to the jury that premeditation

fense counsel argued to the jurors that each of them was entitled to retain his or her honest opinion, and if all members of the jury could not agree that premeditation existed, or were struggling with the definition, the jurors must proceed to deliberate on a lesser-included offense. He also outlined the evidence and argued that it did not show premeditation. After deliberating for less than two hours following the supplemental argument, the jury returned with its verdicts.

¶ 13 Fernandez argues that the independent judgment of the jurors was displaced by the court's failure to inquire if the jury was at an impasse; provide an impasse instruction; advise the jurors not to give up their honestly-held beliefs; and refer the jury back to the original instructions. Whether a jury is at an impasse is an important determination to be made by the trial court because prematurely giving an impasse instruction may also be a form of coercion. *See State v. Huerstel,* 206 Ariz. 93, 99, ¶ 17, 101, ¶ 25, 75 P.3d 698, 704, 706 (2003) (reversing on the basis of coercion, in part because the trial court erred in giving an impasse instruction before the jury indicated it had reached an impasse). "Rule 22.4 of the Arizona Rules of Criminal Procedure permits the trial court, upon being advised by the jury that it has reached an impasse in its deliberations, to inquire how it can assist the jury in its deliberations." *See State v. Andriano,* 215 Ariz. 497, 509, ¶ 55, 161 P.3d 540, 552 (2007). In *Andriano,* the jurors asked the following question: "If we are unable to reach a unanimous verdict, what is the procedure that will be followed?" *Id.* at 508, ¶ 54, 161 P.3d at 551. Our supreme court concluded that the jury's question "affirmatively indicated" that the jurors were at an impasse. *Id.* at 509, ¶ 56, 161 P.3d at 552. The court clarified the impasse rule set forth in *Huerstel,* stating that it "does not require

that the jury unequivocally state that it cannot reach a verdict, only that it give an 'affirmative indication' that it is deadlocked." *Id.,* citing *Huerstel,* 206 Ariz. at 99, ¶ 17, 75 P.3d at 704.

¶ 14 Although the prosecutor in this case argued that the jury had reached an impasse, the jury's note seeking an expanded definition of premeditation did not affirmatively indicate that it was deadlocked on the issue of premeditation, which would have required it to proceed to deliberate on a lesser-included offense.[6] Nor did the jury indicate that it was approaching an impasse, which might have appropriately triggered an inquiry whether an impasse existed. The jury's question simply indicated that the jurors were "struggling with what constitute[d] pre-meditation" and that they wanted a more detailed definition of the concept to help them "understand the definition of premeditation." The record also does not substantiate Fernandez' claim that the judge "*assumed* that the jury had reached an impasse." (Emphasis added.) Our reading of the record suggests that the court viewed the jury note as an indication that the jury was confused, not that it was deadlocked. Therefore, we conclude the jury was not at an impasse when it asked the question regarding premeditation and it would have been improper to give the impasse instruction at that time.

¶ 15 When a jury is at an impasse, a trial court has several options to assist the jury, including "directing the attorneys to make additional closing arguments[.]" Ariz. R.Crim. P. 22.4 and cmt. Because the jury was not at an impasse in this case, we must decide whether the rationale behind the comment to Rule 22.4, permitting additional closing arguments, supports the trial court's decision. In *State v. Patterson,* this court

requires actual reflection, and a "knee-jerk reaction" would not satisfy that element.

6. At trial, Fernandez did not take a clear position on the impasse issue. He argued that *if* the jurors were at an impasse, they should be instructed to proceed to lesser-included offenses. On appeal, the State argues that the jury was not at an impasse regarding premeditation. Fernan-

dez, in his opening brief, states there was "no affirmative indication of an impasse." In his reply brief, however, he maintains there was "material disagreement between the jurors as to whether premeditation existed." Regardless of the position of either party, at trial or on appeal, the facts of this case do not support the conclusion that the jury was at an impasse.

addressed a similar situation in which the jury had not reached an impasse but had asked for additional evidence after it had begun deliberating. 203 Ariz. 513, 515, ¶ 12, 56 P.3d 1097, 1099 (App.2002) *remanded for reconsideration on other grounds by* No. CR 03–0007–PR (Ariz. May 28, 2003), 2003 WL 21242145. Specifically, the jury requested a map of the area where the shooting at issue had occurred. *Id.* at 513, ¶ 4, 56 P.3d at 1097. We determined that the trial court did not err when it allowed the case to be reopened and a map admitted into evidence for the purpose of assisting the jury. *Id.* at 515, ¶ 12, 56 P.3d at 1099. We recognized that Rule 22.4 did not "directly address questions from a deliberating jury that is not at an impasse," but noted that "the same considerations of appropriately assisting a jury-without prejudicing the rights of the parties-are applicable" when the jury was not at an impasse. *Id.* at 514–15, ¶¶ 7, 10, 56 P.3d at 1098–99 (emphasis omitted). We also noted that Rule 22.4 was adopted so juries could function more effectively. *Id.* at 514, ¶ 7, 56 P.3d at 1098. The rule was based in part on the recommendation that "[t]he trial judge should fully and fairly respond to all questions asked and requests made by deliberating jurors concerning the instructions and the evidence, recognizing that the jurors are capable of defining their needs in deciding the case." *Id.* at 515 n. 3, ¶ 10, 56 P.3d at 1099 (emphasis omitted) (quoting Arizona Supreme Court Committee on More Effective Use of Juries, *Jurors: The Power of 12* at 118 (1994)). Furthermore, on the interaction between a trial judge and the jury, we noted:

> This case is a perfect example of a trial judge who appropriately exercised his discretion and substantively responded to a jury's question during deliberations. Al-

though the jury was not at an impasse, *e.g.* Rule 22.4, the same considerations of appropriately assisting a jury-without prejudicing the rights of the parties-are applicable here: the trial judge should "fully and fairly respond," when possible.

*Id.* at ¶ 10.

¶ 16 Here, the trial court acknowledged that it could not add anything to the legal definition of premeditation, but attempted to satisfy the jury's apparent need for clarification of an element of an offense by allowing additional closing argument. The court conveyed its order for supplemental argument to the jury in a neutral manner. The court did not single out any jurors holding particular viewpoints, nor did it give the jurors the impression that they should reach a particular verdict. The court gave the prosecution and defense equal time for presentation of their supplemental arguments on premeditation. Additionally, the court's order directing supplemental argument is consistent with more general rules governing the conduct of a trial and assistance to the jury during deliberations. *See Hedlund v. Sheldon*, 173 Ariz. 143, 146, 840 P.2d 1008, 1011 (1992) (stating that trial judges have "inherent power and discretion to adopt special, individualized procedures designed to promote the ends of justice in each case that comes before them," as long as such procedures are not inconsistent with statutory or constitutional provisions or other rules of the court) (citation omitted); Ariz. R.Crim. P. 19.1(a) (permitting the court to vary the order of trial, including the order of closing arguments and the charge to the jury); Ariz. R.Crim. P. 22.3 (allowing the court to respond to jury inquiries during deliberation by providing further instruction or rereading testimony).[7]

---

7. Fernandez argues that supplemental argument on a legal issue prior to impasse constitutes an abuse of discretion, relying on three cases. *See State v. Ramirez*, 178 Ariz. 116, 126, 871 P.2d 237, 247 (1994) (holding that trial court does not abuse its discretion by referring the jury back to original instructions, if they adequately address the issue the jury had asked it to clarify); *Des Jardins v. State*, 551 P.2d 181, 190 (Alaska 1976) (holding that judge did not abuse his discretion in refusing to answer jury questions, advising, however, that a reference to the previously-given

instructions would have been desirable); *State v. Hawkins*, 165 Mont. 456, 460, 529 P.2d 1377, 1379–80 (1974) (holding that the judge did not abuse his discretion when he responded to the jury's questions about the meaning of premeditation by referring them to instructions already given). None of these cases involve supplemental argument. Rather, each of them supports our conclusion in this case that the trial court has discretion in attempting to address the concerns of the jury.

¶ 17 Under the circumstances present in this case, we find no prejudice to Fernandez and no abuse of discretion in the court's procedure for resolving the jury confusion. We cannot say the jury was coerced when the court ordered supplemental argument on premeditation based on the jury's question. We note, however, that our conclusion in this case should not be interpreted as suggesting supplemental closing argument is appropriate simply because a jury submits a question to the court during deliberations. "A trial judge does not ... have free reign in attempting to get the jury to agree on a verdict." *State v. Michael,* 161 Ariz. 382, 385, 778 P.2d 1278, 1281 (App.1989) (quoting *McCutcheon,* 150 Ariz. at 319, 723 P.2d at 668 (1986)). A trial court has discretion in responding to questions to assist the jury in performing its function, but must avoid taking steps that would displace the independent judgment of the jury.

## II. Dangerous Crimes Against Children

¶ 18 Fernandez argues that the trial court erred as a matter of law in allowing the jury to determine whether Fernandez' conduct was sufficiently focused on children to satisfy the dangerous crimes against children sentencing enhancement under A.R.S. § 13–604.01 (2001). After the State rested its case, Fernandez moved for a judgment of acquittal, contending the evidence failed to establish that he aimed at or targeted any children, either on the balcony, or in the car.

¶ 19 The trial court denied Fernandez' motion, finding that a reasonable jury could conclude that when Fernandez fired a dozen or more shots at a balcony with people on it, "plus the fact that he had been to that apartment before, knew that there were children living there, and knew that these folks hung out on this balcony all the time, that he was targeting, focusing or directing his conduct at these victims ..., some of whom happened to be children." The court also found that a reasonable jury could conclude Fernandez would have seen the children in the car through the driver's car window when he tapped on it, and thus also targeted the children when he fired seven or more shots at the car.

¶ 20 The jury was subsequently instructed: If you find the defendant guilty on either counts 1, 2, 5, 6 or 7, you must determine whether or not the offense was a "dangerous crime against a child." An offense is a dangerous crime against a child if the defendant's conduct was focused on, directed against, aimed at, or targeted a victim under the age of fifteen. The defendant need not have known that the victim was under the age of fifteen.

For each of these counts, the jury found the offense was a dangerous crime against children. The court denied Fernandez' motion for a new trial, which alleged, in part, that the court erred in not dismissing these allegations or granting judgment of acquittal on them as a matter of law.

¶ 21 Our supreme court has held that the § 13–604.01 enhancement applies only when the defendant's conduct was "focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen." *State v. Williams,* 175 Ariz. 98, 103, 854 P.2d 131, 136 (1993). In *Williams,* the defendant was charged with aggravated assault for driving into the back of another vehicle and injuring a child. *Id.* at 99, 854 P.2d at 132. The court determined that the legislature did not intend the "dangerous crimes against children" statute § 13–604.01, to apply to a case in which the child was "the unintended and unknown victim of someone's generalized unfocused conduct." *Id.* at 101, 103, 854 P.2d at 134, 136. The court cautioned, however, that knowledge of the victim's age is unnecessary, stating as follows: "When an individual targets a person, he or she generally assumes the risk that the victim will turn out to be within a protected age group. We hold only that the victim must be the person against whom the crime is directed, not that the accused must know that the person is under fifteen." *Id.* at 103, 854 P.2d at 136.

¶ 22 Relying upon different language in *Williams,* Fernandez argues that he should not be subject to the enhancement penalties of § 13–604.01 because the legislative intent was not met as he was not a predator "who pose[d] a direct and continu-

ing threat to the children of Arizona." *See id.* at 102, 854 P.2d at 135. In *State v. Sepahi,* our supreme court reaffirmed its holding in *Williams* that the sentencing enhancement applied only when defendant's conduct was "focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen." 206 Ariz. 321, 324, ¶ 19, 78 P.3d 732, 735 (2003). The court also clarified *Williams* by holding that the statute does not require "that the perpetrator be shown to be 'peculiarly dangerous' to children or 'pose a direct and continuing threat to children'" as such an interpretation would effectively amend the statute. *Id.* at ¶ 15. Therefore, the State was not required to prove that Fernandez posed a direct and continuing threat to the children of Arizona.

¶ 23 Fernandez also argues that the evidence was insufficient to establish that he "focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen." Evidence is sufficient to support a jury finding when, viewed in the light most favorable to supporting the finding, it is more than a mere scintilla and is such proof as would convince reasonable persons beyond a reasonable doubt. *See State v. Tison,* 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981). The trial court must enter a judgment of acquittal only "if there is no substantial evidence to warrant a conviction." Ariz. R.Crim. P. 20(a). Ultimately, "[i]f reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *State v. Rodriguez,* 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996) (citations omitted).

¶ 24 In this case, substantial evidence supports the finding that Fernandez targeted the child victims. The evidence showed nine bullet impacts on and inside the vehicle in which three children under the age of fifteen years were sitting. Fernandez' own testimony supports a finding that he targeted or focused on the victims as he

knew that someone was in the car when he fired his rifle. Fernandez also testified that he shot at both the front-passenger door and the back of the car when the car door opened.

¶ 25 A similar number of bullet impacts were found inside the apartment and on its front balcony, on which two children under the age of fifteen were standing. By his own testimony, Fernandez knew that people were on the balcony earlier that night and that the fourteen-year-old girl and the eleven-year-old boy lived in that particular apartment, and often hung out on the balcony, albeit not at night. Further, Fernandez knew that people were still on the balcony when he began shooting.

¶ 26 This case involves circumstances when a reasonable jury could have, and did, conclude that Fernandez intentionally, with premeditation, attempted to murder each of the victims. Fernandez did not claim he intended to target the adults, but simply missed and hit the children. The State did not ask for, and the jury did not receive, any instruction on transferred intent. *Cf. Williams,* 175 Ariz. at 101, 854 P.2d at 134 ("One could commit an intentional crime and still not target a child as the victim. An example would be a case of transferred intent, where a person aims at an adult but strikes a child.")[8]

¶ 27 Further, the finding of a "dangerous crime against a child" was inherent in the jury verdict that Fernandez was guilty of intentional, premeditated, attempted murder of each of the four victims under the age of fifteen years. Fernandez argues that he did not know children were on the balcony or in the vehicle, and thus his conduct only "fortuitously" injured children. The fact that Fernandez may not have known that children were among the victims at whom he was firing, however, is of no consequence to a determination whether the offenses were

---

8. The State did request, and was accorded, a "mistake of fact" instruction on the basis of Fernandez' testimony at one point that he did not believe *anyone* was on the balcony when he fired in that direction. The judge instructed the jury simply that "[i]gnorance or a mistaken belief as to a matter of fact does not relieve a person of

criminal liability unless it negates the culpable mental state required for commission of the offense." The jury was free to, and apparently did, reject Fernandez' testimony with respect to what he observed and intended, which was contradicted by the victims' testimony as well as the physical evidence.

dangerous crimes against children. *See Sepahi*, 206 Ariz. at 324, ¶ 17, 78 P.3d at 735; *Williams*, 175 Ariz. at 103, 854 P.2d at 136. The trial court correctly instructed the jury on the legal standard for a determination that the offenses were dangerous crimes against children, and the jury is presumed to have followed those instructions in reaching its verdict. *See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). A reasonable juror could conclude from the evidence offered at trial that Fernandez' conduct targeted each of the victims who was in the line of his fire, some of whom happened to be children. *See Sepahi*, 206 Ariz. at 324, ¶ 17, 78 P.3d at 735; *Williams*, 175 Ariz. at 103, 854 P.2d at 136. Accordingly, we find no error in the trial court's refusal to enter a judgment of acquittal on the allegations of dangerous crimes against children or to order a new trial.

¶ 28 Fernandez also argues for the first time on appeal that the jury instruction on dangerous crimes against children failed to account for "fortuitous" acts and that the court should not have allowed the jury to make the finding of "dangerous crime against a child" in the guilt phase. Because Fernandez failed to object at trial, we review for fundamental error only. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.

¶ 29 We conclude that the trial court correctly instructed the jury on the governing law, and it was not error, much less fundamental error, to fail to *sua sponte* instruct the jury that Fernandez could not be convicted of a dangerous crime against children if his actions only fortuitously affected a child. "[A] party is not entitled to an instruction when it is adequately covered by other instructions." *State v. Martinez*, 196 Ariz. 451, 460, ¶ 36, 999 P.2d 795, 804 (2000). The concept of "fortuitous acts," as it relates to dangerous crimes against children, was adequately covered by the instruction that the conduct must focus on, be directed against, aim at, or target a child to constitute a dangerous crime against children. Nor do we find any error in allowing the jury to make this determination during the guilt phase, during which the evidence supporting this determination was introduced. In sum, Fernandez has failed to meet his burden to establish that any error, much less fundamental error, occurred and that the error caused him prejudice. *See Henderson*, 210 Ariz. at 568, ¶ 22, 115 P.3d at 608.

## III. Lesser–Included Offense

¶ 30 Finally, Fernandez argues that the trial court committed reversible error by refusing to instruct on aggravated assault as a lesser-included offense of attempted first-degree murder. Fernandez was originally indicted on one count of first-degree murder and ten counts of attempted first-degree murder, or in the alternative, aggravated assault. The court, however, granted the prosecutor's pretrial request, without objection, to dismiss all of the aggravated assault charges in the alternative, and trial proceeded only on the murder and attempted murder charges. At the end of trial, Fernandez requested that the jury be instructed on aggravated assault as a lesser-included offense of attempted first-degree murder. The court denied Fernandez' request, reasoning that attempted first-degree murder did not require either serious physical injury or reasonable apprehension of imminent physical injury, either of which must be proved for a conviction of aggravated assault.

¶ 31 We review the court's denial of a requested jury instruction for abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). Aggravated assault is not a lesser-included offense of attempted murder, for the reasons identified by the trial court. *See State v. Laffoon*, 125 Ariz. 484, 487, 610 P.2d 1045, 1048 (1980). Therefore, the trial court appropriately refused Fernandez' request for an instruction on the lesser offense.

## IV. Fundamental Error in Sentencing

¶ 32 In our review of the record, we have found a sentencing error in Count Two. Although we do not search the record for fundamental error, we will not ignore it when we find it. *State v. Hickman*, 194 Ariz. 248, 250, ¶ 4, 980 P.2d 501, 503 (App.1999). The trial court noted, prior to imposing any sentence, that the range of sentences on the dangerous crimes against children "is life

with a possibility of release after 35 years. If I don't impose that then they have the presumptive of ten on those counts and then 20 years." The court subsequently sentenced Fernandez on Count Two, attempted first-degree murder, a dangerous offense, and dangerous crime against a child, to a term of life with possibility of release after thirty-five years. The court erroneously imposed the life sentence in Count Two pursuant to A.R.S. § 13–604.01(B), which provides that a person at least eighteen years of age, tried as an adult,

> who stands convicted of a dangerous crime against children in the first degree involving attempted first degree murder of a minor who is *under twelve years of age* ... may be sentenced to life imprisonment and is not eligible for ... release ... until the person has served thirty-five years or the sentence is commuted. If a life sentence is not imposed pursuant to this subsection, the person shall be sentenced to a presumptive term of imprisonment for twenty years.

(Emphasis added.) However, the victim in Count Two, V.A., was *fourteen years old* at the time of the offense. Thus, this sentencing provision did not apply. The sentencing provision of subsection C, providing for a presumptive sentence of twenty years when the victim is *"twelve, thirteen, or fourteen years of age"* applies instead. *See* A.R.S. § 13–604.01(C) (emphasis added); *see also* A.R.S. § 13–604.01(F) (providing that the sentence may be increased by seven years on a finding of one or more aggravating circumstances). For this reason, we conclude that the sentence on Count Two was erroneously imposed and must be vacated. *See State v. Hollenback*, 212 Ariz. 12, 16, 126 P.3d 159, 163 (App.2005) (holding that "imposition of an illegal sentence is fundamental error").

## CONCLUSION

¶ 33 For the foregoing reasons, we affirm Fernandez' convictions and sentences, except we vacate his sentence on Count Two and remand for resentencing, with appropriate credit to be given for presentence incarceration.

CONCURRING: PHILIP HALL, Presiding Judge and ANN A. SCOTT TIMMER, Judge.

