NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee*

*v.*

SERGIO ACOSTA, *Appellant*.

No. 1 CA-CR 15-0523
FILED 6-23-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2014-005944-001
The Honorable Richard L. Nothwehr, Commissioner

**AFFIRMED AS CORRECTED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

Sergio Acosta, Buckeye
*Appellant*

***

## MEMORANDUM DECISION

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Maurice Portley joined.

***

**N O R R I S,** Judge:

**¶1**        Sergio Acosta timely appeals from his convictions and sentences for promoting prison contraband, a class 5 felony under Arizona Revised Statutes ("A.R.S.") section 13-2505 (Supp. 2015) ("contraband charge"), and attempting to commit tampering with evidence, a class 1 misdemeanor under A.R.S. §§ 13-1001 (2010), -2809 (2010) ("tampering charge"). After searching the record on appeal and finding no arguable question of law that was not frivolous, Acosta's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), asking this court to search the record for fundamental error. This court granted counsel's motion to allow Acosta to file a supplemental brief *in propria persona*, and Acosta did so. We reject the arguments raised in Acosta's supplemental brief and, after reviewing the entire record, find no fundamental error. Therefore, we affirm Acosta's convictions and sentences as corrected.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**        On May 17, 2014, Acosta was serving a sentence of imprisonment at the Arizona State Prison Complex Lewis. Two corrections officers, Officers C.S. and N.M., entered the dormitory setting of the detention areas, called the "pod," containing Acosta's bed to perform a search.

**¶3**        Officer C.S. entered Acosta's "bedding location" and told Acosta that he was going to strip search him in the bathroom. As Officer C.S. and Acosta began to walk to the bathroom, Officer C.S. saw Acosta take a cellphone out of his pocket, put it in his right hand, and start to run towards the bathroom. Officer C.S. ran after him and saw Acosta throw the cellphone in the toilet and flush it. Officer C.S. told Acosta to "get against

***

[1]We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Acosta**.** *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

the wall." While Acosta was against the wall, "another inmate came from behind" and pushed Officer C.S. Officer C.S. radioed Officer N.M for help. Officer N.M., who had been standing by Acosta's bed, came to his assistance. The Officers retrieved the cellphone from the toilet.

¶4           At trial, Acosta admitted to possessing the cellphone, but asserted it did not belong to him. He testified he was watching T.V. at another inmate's bedding area, called a "house," when some of the inmates yelled "two time" to alert the other inmates to the Officers' probable search. Acosta then looked towards the doors at the entrance of the pod and noticed another inmate, J.V., "stepping out" of his "house." Acosta had not given J.V. permission to be in his "house." When Acosta walked over to his "house," he saw a cellphone on his table, inside a cup.

¶5           Because he believed other inmates might stab him if he "snitched" on J.V., he placed his "hand over the cup so the phone wasn't showing" as Officers C.S. and N.M. approached him. When Officer C.S. ordered him to go to the bathroom for the strip search, he "picked up the cup by the top, still covering it, and [] stood up." When he was unable to discreetly hand the cellphone to another inmate, Acosta ran and threw the cellphone in the toilet. Acosta testified he believed he had no other choice than to do what he did because if he snitched on J.V., he would face consequences from the other inmates.

¶6           An eight-person jury found Acosta guilty on the contraband and tampering charges. At sentencing, the superior court found Acosta had one historical prior felony conviction. *See* A.R.S. § 13-105(22)(a)(i) (Supp. 2015).[2] The superior court sentenced Acosta to 2.25 years' imprisonment in the Arizona Department of Corrections on the contraband charge, *see* A.R.S. § 13-703(I) (Supp. 2015), to be served consecutive to his sentence of imprisonment in the Maricopa County Superior Court, cause no. CR#2007-030016-001 (the "2007 imprisonment offense"), and six months' imprisonment in Maricopa County Jail for the tampering charge, to be

---

[2]Although the Arizona Legislature amended some of the statutes cited in this decision after the date of Acosta's offenses in 2014, the revisions are immaterial to our resolution of this appeal.  Thus, we cite to the current version of the statutes.

served concurrent with the sentence imposed by the court on the contraband charges.[3] *See* A.R.S. § 13-707 (2010).

## DISCUSSION

I. Supplemental Brief

    A. Arguments Pertaining to J.V.'s Privilege against Self-Incrimination and J.V.'s Alleged Letter

        1. Background

¶7 Before trial, Acosta notified the State he intended to call J.V. as a witness. The State moved to have the court appoint counsel for J.V., noting Acosta had also provided it "with a copy of a letter allegedly written by [J.V.], in which he admits to possessing a cell phone while incarcerated in DoC-Lewis." The prosecutor explained, however, that before he had received the letter, he had conducted a telephonic interview with J.V., and during the interview, "[J.V.] denied knowing [Acosta] and denied knowing anything about this case." The prosecutor further explained that should J.V. be called as a witness, he "will necessarily open himself up to criminal liability." Specifically, Acosta could be charged with possession of prison contraband, "by admitting to possessing a phone while in prison," *see* A.R.S. § 13-2505, or, in the alternative, "if he testifies consistently with what he told the State, possibly perjury or other charges relating either to his testimony or the statements he allegedly made in the letter," which, assuming he wrote it, he signed under penalty of perjury. *See* A.R.S. § 13-2702(a)(2) (2010).

¶8 The superior court appointed counsel for J.V. Acosta moved in limine to prevent J.V. from invoking his Fifth Amendment privilege against self-incrimination, or to require J.V. to invoke his Fifth Amendment privilege in the presence of the jury. At a hearing before trial, Acosta questioned J.V. about his possession of the cellphone, the telephonic interview, and the letter. J.V. invoked the Fifth Amendment in response to each question. The superior court found J.V. was entitled to invoke his Fifth Amendment privilege on all questions relating to his conversation with the

---

[3]Because the superior court imposed concurrent sentences on the contraband and the tampering charges, we assume the Maricopa County Jail will grant Acosta six months' credit on the tampering charge for the time Acosta serves on the contraband charge in the Arizona Department of Corrections.

prosecutor and the letter, based on the specific danger of prosecution J.V. faced if compelled to testify, and excused him as a witness.

2.      The Privilege Against Self-Incrimination

¶9          Acosta argues the superior court should have granted his motion to prevent J.V. from asserting his Fifth Amendment privilege against self-incrimination, or required J.V. to assert the privilege in the presence of the jury. We disagree with both arguments.

¶10          First, as an initial matter, to assert the Fifth Amendment privilege against self-incrimination, "a witness must demonstrate a reasonable ground to apprehend danger from being compelled to testify." *State v. Rosas-Hernandez*, 202 Ariz. 212, 216, ¶ 11, 42 P.3d 1177, 1181 (App. 2002) (citation omitted). Although a defendant has a Sixth Amendment right to compel the testimony of a witness whose testimony is "material and favorable to the defense," "[t]here is no Sixth Amendment right to compel a witness to testify if the facts support that the witness has properly claimed the Fifth Amendment privilege." *Id.* at ¶ 10 (citations omitted). As discussed above, *see supra* ¶ 7, J.V. faced a real danger of being prosecuted for either promoting prison contraband under A.R.S. § 13-2505 or perjury. *See* A.R.S. 13-2702(a)(2) (a person commits perjury by making a false unsworn statement regarding a material issue subscribed to "as true under penalty of perjury, believing it to be false."). Under these circumstances, the superior court did not abuse its discretion when it allowed J.V. to assert the privilege. *See Rosas-Hernandez*, 202 Ariz. at 216, ¶ 10, 42 P.3d at 1181.

¶11          Second, the superior court may completely excuse a witness from testifying when it "possesses extensive knowledge about the case" and "determines that a witness could legitimately refuse to answer essentially all relevant questions." *State v. Harrod*, 218 Ariz. 268, 276, ¶¶ 20-21, 183 P.3d 519, 527 (2008) (quotations and citation omitted). Extensive knowledge can be demonstrated when the superior court has heard "the state's entire case and a portion of defendant's." *Id.* at 276, ¶ 21, 183 P.3d at 527 (quotations and citation omitted). Moreover, "[a] trial court does not necessarily have to personally question the witness, conduct a hearing, or allow counsel to call the witness to the stand if the court possesses extensive knowledge of [a] case." *Id.* (quotations and citation omitted).

¶12          Here, the superior court had extensive knowledge of the case—not only was it familiar with the positions taken by the parties in the case, but it also held a hearing in which J.V. invoked the privilege in response to all questions regarding his conversation with the prosecutor and the letter. Accordingly, the superior court did not abuse its discretion

in permitting J.V. to invoke his Fifth Amendment privilege outside the presence of the jury. *See id*. at 275-76, ¶ 19, 183 P.3d at 526-27 ("A trial court's decision whether to allow a party to call a witness before the jury who will assert his Fifth Amendment privilege is reviewed for an abuse of discretion.").

### 3. The Letter

**¶13** Next, Acosta argues the superior court should have admitted into evidence the letter purportedly written by J.V. In that letter, J.V. confessed to "possession" of the cellphone, dropping it in a cup, and leaving it in "Acosta's house" when he saw the "C.O.s walking in with gloves." The superior court ruled the letter was inadmissible under Arizona Rule of Evidence 804(b)(3) because "there was no external evidence that clearly indicated the trustworthiness of the statements in the letter." *See State v. Garza*, 216 Ariz. 56, 66 n.9, ¶ 41, 163 P.3d 1006, 1016 n.9 (2007) ("[S]tatements against interest by unavailable non-party declarants, which are governed by Rule 804(b)(3), are admissible only if there is some external evidence of reliability.") (emphasis omitted) (citation omitted).

**¶14** The superior court did not abuse its discretion in refusing to admit the letter into evidence. *See State v. Franklin*, 232 Ariz. 556, 559, ¶ 10, 307 P.3d 983, 986 (App. 2013) ("Rulings regarding the admissibility of hearsay evidence are reviewed for an abuse of discretion.") (citations omitted). As discussed above, *see supra* ¶ 7, in a telephonic interview with the prosecutor, J.V. denied knowing anything about the case. Additionally, as the superior court pointed out, the only evidence Acosta introduced to show J.V. had written the letter focused on information contained in the letter (J.V.'s unit number and J.V.'s purported signature) and on the envelope (Lewis Prison return address). Thus, because Acosta did not present any external evidence of reliability as to the letter, the superior court did not abuse its discretion in refusing to admit the letter into evidence.

### B. Rule 20 Motion and Prejudice

**¶15** Acosta argues the superior court should not have denied his Rule 20 motion because the State failed to prove, first, the cellphone was a working "communication device," and second, the crime happened in a correctional facility. Exercising de novo review, we reject this argument. *State v. Bon*, 236 Ariz. 249, 251, ¶ 5, 338 P.3d 989, 991 (App. 2014) (denial of a Rule 20 motion reviewed de novo) (citations omitted).

**¶16** Section 13-2505 does not require the State to establish the cellphone was capable of making calls. Under the statute, "contraband means any article whose use or possession would endanger the safety, security or preservation of order in a correctional facility, including but not limited to the articles that the statute lists by name." *State v. Hines*, 232 Ariz. 607, 611, ¶ 13, 307 P.3d 1034, 1038 (App. 2013) (citation omitted). The statute specifically lists "wireless communication device" as an example of "contraband." *See* A.R.S. § 13-2501(1) (Supp. 2015).

**¶17** Here, the State presented substantial, uncontradicted evidence that the item Acosta attempted to flush down the toilet was a cellphone—thus, a wireless communication device. Ariz. R. Crim. P. 20 (judgment of acquittal is appropriate only "if there is no substantial evidence to warrant a conviction); *State v. West*, 226 Ariz. 559, 562, ¶ 16, 250 P.3d 1188, 1191 (2011) ("Substantial evidence . . . is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.") (quotations and citations omitted). Therefore, the cellphone was contraband within the meaning of the statute, regardless of whether it was a working wireless communication device.

**¶18** Next, the State presented substantial evidence that the incident occurred in a "correctional facility." The superior court granted the State's motion to reopen its case and present additional evidence that Lewis was a correctional facility. Officer C.S. then testified the incident occurred in the Arizona prison complex where he works (Lewis)—a place of confinement for individuals convicted of an offense. *See* A.R.S. § 13-2501(2) ("'Correctional Facility' means any place used for the confinement or control of a person . . . Charged with or convicted of an offense").

**¶19** Acosta additionally argues the superior court "showed unfair prejudice to the defense" by permitting the State to present the additional evidence through C.S.'s testimony because C.S. had been in the courtroom "listening to what he needs to say/do in order to get a conviction." We reject this argument. First, "[t]rial courts have broad discretion in deciding whether to reopen a case and admit additional evidence." *State v. Patterson*, 203 Ariz. 513, 514, ¶ 5, 56 P.3d 1097, 1098 (App. 2002) (citation omitted). Second, before the State rested, N.M. and C.S. had already testified they were correction officers who worked in a state prison complex and they were directed to perform the strip search of Acosta, an inmate, while at work. Third, C.S. was serving as the State's "representative" and was entitled to be in the courtroom throughout the trial. *See* Ariz. R. Evid. 615(b) (rule requiring court to exclude trial witnesses at a party's request "does not authorize" exclusion of "an officer or employee of a party that is not a

natural person, after being designated as the party's representative by its attorney").

### C. Prosecutorial Misconduct

#### 1. State's Closing Argument

**¶20** Acosta argues, as he did in the superior court, that prosecutorial misconduct occurred "when the prosecutor used excerpts from a Pixar movie, ('Up') to attack the defense in their closing arguments." We disagree.

**¶21** "Prosecutors have wide latitude in their closing arguments to the jury." *State v. Edmisten*, 220 Ariz. 517, 524, ¶ 23, 207 P.3d 770, 777 (App. 2009) (quotations and citation omitted). Reversal of a conviction is warranted when: "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45, 111 P.3d 369, 382 (2005) (quotations and citations omitted).

**¶22** At closing, the State compared "a dog [] focusing on things he's not supposed to be focusing on," with defense counsel's closing argument that focused on ownership of the cellphone, or indicia of ownership—factors that are irrelevant for a conviction under the contraband statute, which penalizes possession of contraband, regardless of ownership. Although the State may not comment on the integrity of opposing counsel in closing arguments, "[c]riticism of defense theories and tactics is a proper subject of closing argument." *State v. Ramos*, 235 Ariz. 230, 238, ¶ 25, 330 P.3d 987, 995 (App. 2014) (quotations and citation omitted). The State's reference to the film offered a critique of Acosta's defense arguments and was not improper. *See id.* at 237-38, ¶¶ 24-25, 330 P.3d at 994-95 (comments, such as opposing counsel had "rais[ed] distractions or red herrings," did no "more than criticize defense tactics").

#### 2. Alleged Threats to J.V.

**¶23** Acosta argues "[p]rosecutorial misconduct occurred when the prosecutor threatened [J.V.]" by telling him that if he testified—and denied he wrote the letter—the State would prosecute him for perjury, but alternatively, if J.V. testified—and admitted he wrote the letter—the State would charge J.V. with promoting prison contraband. None of these statements constituted prosecutorial misconduct.

**¶24** As discussed above, *see supra* ¶¶ 7-8, Acosta challenged J.V.'s right to invoke his privilege against self-incrimination, and the State

explained the prosecution dangers J.V. faced if he testified. Thus, the State properly informed J.V. of the possible consequences of his testimony. *See State v. Jones*, 197 Ariz. 290, 301-02, ¶ 21, 4 P.3d 345, 356-57 (2000). ("There is no *per se* prosecutorial misconduct when the prosecutor merely informs the witness of the possible effects of his testimony.") (citation omitted).

### 3.     State's Reference to Target Search

**¶25**          Finally, Acosta argues the superior court should have granted a mistrial because the State engaged in prosecutorial misconduct when it disobeyed the superior court's pre-trial ruling not to "label[]" the search a "target search" and not "to present it to the jury as such." The court did not abuse its discretion in refusing to grant a mistrial. *See State v. Williamson*, 236 Ariz. 550, 559, ¶ 27, 343 P.3d 1, 10 (App. 2015) (appellate court reviews "denial of a motion for a mistrial for an abuse of discretion") (citation omitted).

**¶26**          "A mistrial is one of the most dramatic remedies and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *Id*. at 560, ¶ 29, 343 P.3d at 11 (quotations and citation omitted). As we have previously stated, "the trial judge is in the best position to assess the impact of a witness's statements on the jury." *State v. Welch*, 236 Ariz. 308, 314, ¶ 21, 340 P.3d 387, 393 (App. 2014). We consider, "(1) whether the jury has heard something it should not hear, and (2) the probability that the jury was influenced by what it heard," *Williamson*, 236 at 560, ¶ 29, 343 P.3d at 11 (citation omitted), in weighing whether a court should have granted a motion for a mistrial.

**¶27**          Before trial, Acosta moved in limine to preclude "any reference" to a "target search" of Acosta, including any evidence that Officers C.S. and N.M. had been ordered by their supervisor to perform the target search. The superior court granted the motion in part; it allowed the State to present evidence the "prison guards" were directed to perform the search, but prohibited the State from introducing evidence asking "why" Acosta was the target of the search:

> There are limits to the admissibility of the supervisor's directions. Prison guards will be allowed to indicate that they were directed to perform the search, but are not to include other statements regarding allegations of ownership of a cell phone or why Defendant was the target of the search.

¶28            At trial, the State asked C.S. if he was "directed to perform a target search of someone named Sergio Acosta," to which C.S. answered, "Yes, I was," after the court overruled Acosta's objection to the question. And, in closing, the State twice used the term "target search" when summarizing the facts leading up to the search.

¶29            The State's references to "target search" complied with the superior court's ruling. The ruling permitted the State to ask Officer C.S. if he was directed to perform the search, which the State did. And, the ruling precluded the State from asking the officers "why" Acosta was the target of the search, which the State obeyed. Therefore, based on the record, the State did not engage in prosecutorial misconduct when it referenced the target search.

       II.      Anders Review

¶30            We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Acosta received a fair trial. He was represented by counsel at all stages of the proceedings and was present at all critical stages.

¶31            The evidence presented at trial was substantial and supports the verdicts. The jury was properly comprised of eight members and the court properly instructed the jury on the elements of the charges, Acosta's presumption of innocence, the State's burden of proof, and the necessity of a unanimous verdict. The superior court received and considered a presentence report, Acosta was given an opportunity to speak at sentencing, and he did, and his sentences were within the range of acceptable sentences for his offenses.

¶32            We do note that although properly sentenced, the sentencing minute entry contains two errors. First, the minute entry mistakenly reflects that on the tampering charge Acosta was charged under A.R.S. § 123-2809, when in fact he was charged under A.R.S. § 13-2809. Second, the minute entry does not reflect that the court sentenced Acosta on the tampering charge pursuant to A.R.S. § 13-707 (2010), the statute that governs the length of sentences for misdemeanor convictions. Thus, we correct the sentencing minute entry to reflect that on the tampering charge Acosta was charged under A.R.S. § 13-2809 and sentenced under A.R.S. § 13-707.

**CONCLUSION**

¶33            We decline to order briefing and affirm Acosta's convictions and sentences as corrected.

**¶34**          After the filing of this decision, defense counsel's obligations pertaining to Acosta's representation in this appeal have ended. Defense counsel need do no more than inform Acosta of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

**¶35**          Acosta has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. On the court's own motion, we also grant Acosta 30 days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA