IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RODOLFO MARQUEZ RAMOS, *Appellant.*

No. 1 CA-CR 13-0076
FILED 07-22-2014

Appeal from the Superior Court in Maricopa County
No.  CR2012-126450-002
The Honorable Harriett E. Chavez, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Office of the Legal Defender, Phoenix
By Cynthia Dawn Beck
*Counsel for Appellant*

_____

**OPINION**

Judge Michael J. Brown delivered the Opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Donn Kessler joined.

_____

**B R O W N,** Judge:

¶1        Rodolfo Marquez Ramos appeals from his convictions and sentences for conducting a chop shop and theft of a means of transportation, and raises several claims of prosecutorial misconduct. Although the prosecutor improperly commented on Ramos's failure to testify, we conclude the error, while fundamental, was not prejudicial. We therefore affirm.

**BACKGROUND**

¶2        R.H. left her home one evening to stay overnight elsewhere. As she was leaving, R.H. saw her mother's car parked next to the curb in front of their home. When R.H. returned home the following afternoon, she noticed the car was missing and contacted the police.

¶3        Officer Glenn Doerr was able to track the car to a Glendale residence. He arrived at the residence shortly thereafter and walked toward an "open-back" trailer located on the property. Officer Doerr saw Ramos and co-defendant James Wilson standing inside the trailer next to a car. The officer noticed both men were dirty and Ramos's hands and clothing were covered in grease.

¶4        At that point additional patrol units arrived and Ramos and Wilson were taken into custody. Officer Doerr entered the trailer and found a car stripped of its motor, tires, and "other suspension components." Other officers found tools in the trailer, including bolt cutters, tire irons, and a tool used "to cut the parts off a vehicle." In Ramos's pocket, officers also found a key that had been "ground down" such that it could "manipulate the tumblers" in multiple ignitions. When officers checked the vehicle identification number, they confirmed it was the car R.H. reported as missing.

¶5        The State charged Ramos and Wilson each with one count of conducting a chop shop and one count of theft of a means of transportation. The State also charged Ramos with one count of

2

possession of burglary tools and alleged he had one historical prior felony conviction.

¶6        The charges against Ramos and Wilson were consolidated for trial.[1]  R.H. and her mother testified they did not know either Ramos or Wilson and did not give either of them permission to take the car from their home.  Neither Ramos nor Wilson testified.  The jury convicted each of them of conducting a chop shop and theft of a means of transportation, but hung on the charge of possession of burglary tools against Ramos. The trial court imposed concurrent three-year terms of standard probation on Ramos for each count and this timely appeal followed.

## DISCUSSION

¶7        Ramos argues the prosecutor engaged in several forms of misconduct that warrant setting aside his convictions and sentences. Specifically, Ramos contends the prosecutor improperly (1) commented on Ramos's failure to testify at trial; (2) bolstered the prosecutor's credentials and impugned the integrity of defense counsel; (3) provided personal opinion as to Ramos's guilt; and (4) vouched for the State's witnesses.  We address each issue in turn.

¶8        Ramos objected at trial to the alleged prosecutorial vouching; we therefore review that contention for harmless error.  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005).  Because Ramos failed, however, to object at trial to any of the other acts or comments he contends on appeal constituted prosecutorial misconduct, he has waived those arguments absent a showing of fundamental error.  *Id.* at ¶ 19.

### A.    Comments on Ramos's Failure to Testify

¶9        Ramos argues the prosecutor improperly commented on his failure to testify.  We agree, but conclude the error was not prejudicial.

¶10       It is well-established that both federal and state laws prohibit a prosecutor from making any comment, direct or indirect, about a defendant's failure to testify.  *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); Ariz. Const. art., 2, § 10 ("No person shall be compelled in any criminal

---

[1]        Wilson was sentenced separately and is not a party to this appeal.

case to give evidence against himself[.]"); Ariz. Rev. Stat. ("A.R.S.") § 13-117(B) ("The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings."); *see also Griffin v. California*, 380 U.S. 609, 613-14 (1965); *State v. Rutledge*, 205 Ariz. 7, 12, ¶ 26, 66 P.3d 250, 255 (2003); *State v. Smith*, 101 Ariz. 407, 410, 420 P.2d 278, 281 (1966).

¶11 In *Griffin*, the United States Supreme Court explained the purpose of the prohibition:

> [A] comment on the refusal to testify is a remnant of the inquisitorial system of criminal justice, which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.

380 U.S. at 614 (internal quotations and citations omitted). Given those concerns, the Supreme Court held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615.

¶12 In this case, the prosecutor's initial closing argument was brief and did not discuss the elements of the crimes or any specific evidence. Counsel for Ramos asserted several times in his closing argument that the State failed to present any "direct evidence" demonstrating Ramos participated in the crimes and that the State's reliance on circumstantial evidence was insufficient to prove guilt beyond a reasonable doubt. During his detailed rebuttal, the prosecutor referenced the definitions of direct and circumstantial evidence included in the final jury instructions. He explained that the State was required to prove all of the elements of the crimes alleged and argued it had done so. The prosecutor also stated:

> You don't strip a car that doesn't belong to you without at least alluding to the fact that it might be stolen. It's that simple. *The defendants are never gonna get on the stand and say "I did it. You got me."* So they're going to try to poke holes in whatever evidence the State has.

(Emphasis added.) Shortly thereafter, the prosecutor added: "So, red herring is a distraction. That's what the whole defense counsel raised is red herrings, because, again, the defendant's [sic] never gonna say, 'I did it.'" A few minutes later, the prosecutor made a similar point: "Whatever evidence the State presents, the defense will always attack something that wasn't done because in any criminal case there's going to be something that's missed. Again, the defendants are never gonna say, 'I did it. You got me.'"

¶13        "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Rutledge*, 205 Ariz. at 13, ¶ 33, 66 P.3d at 56. "To be constitutionally proscribed, a comment must be adverse; that is, it must support an unfavorable inference against the defendant and, therefore, operate as a penalty imposed for exercising a constitutional privilege." *State v. Mata*, 125 Ariz. 233, 238, 609 P.2d 48, 53 (1980).

¶14        While the prosecutor in this case may have intended to aim his statements at rebutting defense counsel's argument about lack of direct proof, the statements directly pointed to Ramos's failure to take the stand, which "support[ed] an unfavorable inference" that Ramos chose not to testify because he could not do so without incriminating himself. *Cf. Mata*, 125 Ariz. at 238, 609 P.2d at 53 (holding that a prosecutor's remarks did not "support an unfavorable inference" when "the remarks were inadvertent and immediately corrected"). The prosecutor's comments thus operated as a penalty on Ramos's exercise of his constitutional right to remain silent. *See State v. Still*, 119 Ariz. 549, 551, 582 P.2d 639, 641 (1978) (finding a constitutional violation when the jury would necessarily conclude that the defendant "was the only person who could possibly contradict or explain the State's evidence" and the

prosecutor's pointing toward the defendant emphasized his failure to take the witness stand and tell his side of the story).[2]

**¶15** In light of the constitutional violation, fundamental error occurred because Ramos was deprived of a right essential to his defense. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607; *State v. Cannon*, 118 Ariz. 273, 274, 576 P.2d 132, 133 (1978) (finding fundamental error based on prosecutor's comment to the jury that the defendant "never answered" where he was on the night in question because it was "a direct comment on defendant's failure to take the witness stand"); *State v. Decello*, 113 Ariz. 255, 258, 550 P.2d 633, 636 (1975) (concluding that the prosecutor's statement "No one, no one, no one got up on this stand and testified to you contrary to what was testified to you by the witness" constituted fundamental error); *State v. Rhodes*, 110 Ariz. 237, 238, 517 P.2d 507, 508 (1973) (reversing defendant's conviction based on prosecutor's comment that defendant "did not explain away off [the] witness stand" and explaining that in a case in which the "rights against self-incrimination are violated[,] it is fundamental error").

**¶16** Notwithstanding the fundamental nature of the error, we must determine whether the error requires reversal. With no citation to authority, Ramos argues that the error is prejudicial per se. Our supreme

---

[2] Citing *State v. Alvarez*, 145 Ariz. 370, 373, 701 P.2d 1178, 1181 (1985), *State v. Gillies*, 135 Ariz. 500, 510, 662 P.2d 1007, 1017 (1983), and *State v. Hernandez*, 170 Ariz. 301, 307-08, 823 P.2d 1309, 1315-16 (App. 1991), the State argues that the prosecutor's comments referencing Ramos's failure to take "the stand" and testify were "fair rebuttal" to Ramos's claim of insufficient evidence. *Alvarez* and *Hernandez* did not involve violations of the Fifth Amendment, and are therefore inapposite. In *Gillies*, defense counsel argued in closing "that the state had accumulated and presented to the jury physical evidence which had no real connection to the defendant." 135 Ariz. at 510, 662 P.2d at 1017. In rebuttal, the prosecutor stated: "All other evidence points to the defendant. His cigarette on the rock on top of her body, as in the car, all the physical evidence that had been taken from the vehicle, all her property, all other evidence points to the defendant, . . . [and] he didn't try to explain that because he couldn't." Our supreme court concluded that the prosecutor's comments were "fair rebuttal" to defense counsel's argument. *Id.* Unlike *Gillies*, in this case the prosecutor did not vaguely reference Ramos's failure to "explain" incriminating evidence, but directly commented on his failure to testify by stating that Ramos would never "get on the stand and say 'I did it.'"

court's opinion in *Smith* supports Ramos's position. 101 Ariz. at 410, 420 P.2d at 281. That case, decided shortly after *Griffin*, held that the general rule of waiver absent a timely objection "was inapplicable" when "the claimed error is so fundamental that it is manifest that the defendant did not have a fair trial[.]" *Id.* The court explained that "extreme caution must be exercised in permitting an evasion of these fundamental rights" and "[w]hen one has been denied a constitutional right as essential as the right against self-incrimination, prejudicial effect will be presumed and the error will be deemed fundamental."[3] *Id.* at 409-10, 420 P.2d at 280-81.

¶17 Subsequent development of the law, however, persuades us that a prosecutor's comment on a defendant's failure to testify does not necessarily require reversal of the defendant's conviction. *See Chapman v. California*, 386 U.S. 18, 20 (1967) (recognizing that "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error" but declining to treat a violation of the *Griffin* rule as compelling an automatic reversal of the conviction); *Rutledge*, 205 Ariz. at 13, nn. 5-6, ¶¶ 30-32, 66 P.3d at 56 nn. 5-6 (explaining that a comment on a defendant's failure to testify may be "harmless error" or "fundamental error," depending on the facts of the case); *State v. Ring (Ring III)*, 204 Ariz. 534, 552-53, ¶ 46, 65 P.3d 915, 933-34 (2003) (providing specific examples of structural error, which is rarely applied). Instead, evaluating prejudice under the fundamental error standard of review is a fact-intensive inquiry and varies "depending upon the type of error that occurred and the facts of a particular case." *Henderson*, 210 Ariz. at 568, ¶ 26, 115 P.3d at 608; *State v. James*, 231 Ariz. 490, 494, ¶ 15, 297 P.3d 182, 186 (App. 2013).

¶18 To establish prejudice, Ramos carries the burden of showing that absent the improper comments a reasonable jury could have reached a different result. *See Henderson*, 210 Ariz. at 569, ¶ 27, 115 P.3d at 609; *Rhodes*, 110 Ariz. at 238, 517 P.2d at 508 (concluding prosecutorial misconduct is prejudicial when "evidence hangs in delicate balance [and]

---

[3] Based on *Smith*, some commentators have included Arizona as one of several states that "appear to have adopted a more stringent standard than that of the Supreme Court, indicating that a violation of the *Griffin* rule is inherently prejudicial so as to call for automatic reversal." *See* Stein Closing Arguments § 1:59 (2013-2014 ed.); 1 Wharton's Criminal Evidence § 3:22 (15th ed.) (stating that "nothing in *Chapman* [*v. California*, 386 U.S. 18 (1967)] would preclude a state court from holding that a violation of the *Griffin* rule is prejudicial per se and thus a ground for automatic reversal of a conviction, and some state courts have so held[,]" including Arizona).

any prejudicial comment [is] likely to tip the scales in favor of the State"). If overwhelming evidence of guilt exists in the record, we may conclude that a defendant has failed to meet his burden of establishing prejudice from the impermissible comment. *State v. Trostle*, 191 Ariz. 4, 16, 951 P.2d 869, 881 (1997) (concluding that prosecutor's statement was an impermissible comment on defendant's failure to testify, but the error did not contribute to the jury's verdict in view of the "overwhelming evidence of guilt and the context within which it was made").

¶19 To prove that Ramos conducted a chop shop in violation of A.R.S. § 13-4702, the State was required to establish (1) he knowingly owned or operated a "building, lot or other premises" in which he altered, disassembled, dismantled, reassembled, or stored a vehicle; and (2) he knew the vehicle was obtained by theft "with the intent to [a]lter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate or remove the identity of the motor vehicles or motor vehicle parts[.]"  A.R.S. § 13-4701(1).  As relevant here, to prove Ramos committed theft of a means of transportation, the State was required to show that Ramos "control[led] another person's means of transportation knowing or having reason to know that the property is stolen."  A.R.S. § 13-1814(A).  As set forth in A.R.S. § 13-2305(1), "possession of property recently stolen, unless satisfactorily explained, may give rise to an inference that the person in possession of the property was aware of the risk that it had been stolen or in some way participated in its theft."

¶20 The overwhelming evidence presented at trial demonstrated that less than twenty-four hours after the car was stolen, Officer Doerr found Ramos covered in grease, standing in a trailer with the  dismantled car and various tools typically used to strip vehicles.  R.H.'s mother testified unequivocally that she never gave anyone permission to take the car from her home.  Given the strength of the State's evidence and the permissible inference in A.R.S. § 13-2305(1), we hold that even without the prosecutor's impermissible statements regarding Ramos's failure to testify, no reasonable jury could have acquitted Ramos of either conducting a chop shop or  theft of a means of transportation.  Therefore, Ramos has not met his burden of establishing the error was prejudicial.

¶21 Our holding, however, should not be interpreted as minimizing the seriousness of this error.  "[F]undamental error is still error and is not turned into non-error by the overwhelming evidence of guilt.  By thus approaching the precipice of fundamental error, the prosecution runs the risk of having an otherwise good case reversed when, on appeal the evidence of guilt is less than overwhelming." *State v.*

*Anderson*, 110 Ariz. 238, 241, 517 P.2d 508, 511 (1973). Therefore, as our supreme court recently reminded prosecutors, they should "refrain from venturing even close to commenting on a defendant's exercise of the significant rights protected by the Fifth Amendment[.]" *State v. Parker*, 231 Ariz. 391, 407, ¶ 68, 296 P.3d 54, 70 (2013).

### B.     Other Claims of Prosecutorial Misconduct

**¶22**        We likewise conclude that none of the other claims of prosecutorial misconduct merit reversal. Prosecutors are afforded "wide latitude in presenting their closing arguments to the jury[.]" *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145, 94 P.3d 1119, 1154 (2004) (internal quotations omitted). Prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal[.]" *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984).

**¶23**        Ramos contends the prosecutor improperly bolstered his own credentials by informing the jury he had been practicing law for twenty years. Specifically, during his rebuttal argument, the prosecutor relayed advice to the jury he received "almost 20 years ago" when he was preparing for the bar exam, namely, "not to miss the forest for the trees." We perceive no misconduct in the prosecutor's fleeting reference to how long ago he sat for the bar exam. It was not the focus of the statement and the prosecutor did not attempt to argue he had superior knowledge or expertise due to his years of experience.

**¶24**        Ramos also argues the prosecutor improperly impugned defense counsel. During his rebuttal argument, the prosecutor claimed that defense counsel's focus on the State's failure to prove Ramos owned the property upon which the trailer and stripped vehicle were found was an attempt to divert the jurors from the relevant evidence by raising distractions or "red herrings." The prosecutor also told jurors that defense counsel asked them to speculate and "check [their] common sense at the door."

¶25 "Jury argument that impugns the integrity or honesty of opposing counsel is [] improper," *State v. Hughes*, 193 Ariz. 72, 86, ¶ 59, 969 P.2d 1184, 1198 (1998), but "[c]riticism of defense theories and tactics is a proper subject of closing argument," *U.S. v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997). Although some of the prosecutor's comments suggested that defense counsel was attempting to mislead the jury, we cannot say that those statements did more than criticize defense tactics.

¶26 Next, Ramos contends the prosecutor improperly offered his personal opinions during rebuttal closing argument by repeatedly using the phrases "the State submits" and "the State would submit." "There are two types of prosecutorial vouching: (1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Duzan*, 176 Ariz. 463, 467, 862 P.2d 223, 227 (App. 1993) (internal quotation omitted). "A prosecutor must avoid assertions of personal knowledge." *Id.*

¶27 The statements cited by Ramos, however, were not improper because the prosecutor's use of the phrase "the State submits" was limited to discussing the evidence presented at trial and did not suggest he was aware of information not presented to the jury that would support a finding of guilt. *See U.S. v. Necoechea*, 986 F.2d 1273, 1279 (9th Cir. 1993) (holding that "I submit" statements do not constitute vouching). Therefore, we do not agree that the prosecutor's use of these phrases constituted prosecutorial misconduct.

¶28 Finally, Ramos asserts the prosecutor engaged in impermissible vouching by "placing the prestige of the government" behind the testimony of the police officers. When determining whether a prosecutor's statements improperly vouched for a witness's credibility, the statements must be considered in context. *State v. Haverstick*, 234 Ariz. 161, 165, ¶ 7, 318 P.3d 877, 881 (App. 2014).

¶29 In his closing argument, defense counsel noted that Officer Johnson's testimony "seemed slightly inconsistent" with Officer Doerr's testimony and he invited the jurors to "review the photographs of the trailer and come to [their] own conclusions" as to whether the officers' "recollections" were accurate. During his rebuttal, the prosecutor responded by framing defense counsel's statements as an argument "that the officers somehow would have lied or fabricated" their testimony. The prosecutor further argued that the "police are simply doing their job" and

suggested they have no motive to lie. The trial court sustained defense counsel's objection and warned counsel to be careful with his comments.

¶30 Although the prosecutor mischaracterized defense counsel's statements regarding the officers' credibility, we conclude the prosecutor's rhetorical questions to the jury "[W]hat motive would the police have to lie in a case like this?" and "[W]hat motive would they have to lie or fabricate any evidence?" did not rise to the level of misconduct. Moreover, the trial court instructed the jury that the attorneys' closing arguments were not evidence, and we presume the jurors followed the court's instructions. *See State v. Ramirez*, 178 Ariz. 116, 127, 871 P.2d 237, 248 (1994). On this record, there is no reasonable likelihood the prosecutor's statements could have affected the jury's verdict. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 67, 132 P.3d 833, 847 (2006).

## CONCLUSION

¶31 For the foregoing reasons, we affirm Ramos's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh