NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

ZERA P. SUMMERS, JR.,
*Appellant*.

No. 1 CA-CR 14-0362
FILED 6-9-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-416358-001
The Honorable William L. Brotherton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

Zera P. Summers, Jr.
*Appellant*

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**O R O Z C O**, Judge:

¶1 Zera P. Summers, Jr. appeals his convictions and sentences for one count of aggravated assault, a class three dangerous felony; one count of disorderly conduct, a class six dangerous felony; and one count of threatening and intimidating, a class one misdemeanor. Summers' counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969), advising this court that after a search of the entire appellate record, he found no arguable question of law. Summers was afforded the opportunity to file a supplemental brief in propria persona, which he has done and we have considered. Our obligation on appeal is to review "the entire record for reversible error." *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). Finding no reversible error, we affirm Summers' convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

¶2 J.F. and V.H. were at a bus stop when Summers began following them. Summers appeared to be intoxicated and began to make comments that J.F. believed were intended to make him "get violent or get mad," mostly "drunk talk." Attempting to avoid a confrontation with Summers, J.F. and V.H. returned to Vanessa's, V.H.'s mother, apartment and Summers followed them inside. After leaving the apartment, Summers pointed a knife at J.F. and V.H. Several of the apartment complex's residents, including Daren Howard, congregated around the three. At some point during the altercation, Summers allegedly cut his finger, said "Blood Swans"[1] and attempted to write something on a wall with the blood

---

[1] At trial, Mesa Police Department Gang Unit Detective Tapia, testified that the Swan Love Bloods are a documented criminal street gang operating predominately in the Casa Grande area. He further testified that he did not believe Summers was a member of that gang.

on his finger. J.F. allegedly told Summers to put the knife down and Summers put it in his back pocket.

¶3        V.H. pulled the knife from Summers' pocket, and J.F. and Summers began to swing at each other and wrestled to the ground. J.F. got on top of Summers, and Summers attempted to strike J.F. with a nearby rock. However, the rock fell out of Summers' hand, and the police arrived shortly thereafter. Summers began screaming, "I got you, motherfucker" and "[y]ou're done, motherfucker." Summers was arrested and while in police custody, Summers told Officer Silva, "I will get out" and "I will get you, bitch."

¶4        Summers was charged with three counts of aggravated assault, one count of threatening or intimidating, and one count of disorderly conduct. A jury found Summers guilty of one count of aggravated assault, disorderly conduct, and threatening or intimidating.

¶5        The trial court sentenced Summers to concurrent presumptive terms of 13.25 years' imprisonment as to the aggravated assault conviction, 5.75 years' imprisonment as to the disorderly conduct conviction, and seventy-six days of incarceration for the threatening and intimidating conviction, to run concurrently. The court also gave Summers seventy-six days of presentence incarceration credit. Summers timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2015).[2]

## DISCUSSION

I.        Testimony re Gang Membership

¶6        Summers argues the trial court erred by admitting testimony about his "alleged gang affiliation" into evidence. Specifically, Summers asserts that such testimony was "highly prejudicial" and that its admission violated his due process rights.

¶7        We review the trial court's admission of testimony for an abuse of discretion. *See State v. Wood*, 180 Ariz. 53, 61 (1994). The trial court is best suited to "balance the probative value of challenged evidence against its potential for unfair prejudice," and we view the evidence in the light "most favorable to its proponent, maximizing its probative value and

---

[2]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

minimizing its prejudicial effect." *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998).

**¶8** The prosecutor introduced evidence concerning Summers' purported "Blood Swans" statement at trial as proof that Summers placed J.F. in "reasonable apprehension of imminent physical injury" as required by A.R.S. § 13-1203.A.2. Moreover, Detective Tapia testified that he did not believe Summers was a member of the Swan Bloods gang.

**¶9** In his closing argument, the State reiterated:

> Folks, it didn't matter if [Summers] was in a gang or not. He's not charged with being in a gang. The reason all that evidence came out and the reason it's presented to you wasn't that [Summers] was in a gang, it was [that Summers] was saying he was in a gang. He was trying to scare [J.F.]. He was trying to intimidate him.

**¶10** Because Summers' statement about gang affiliation, regardless of its truth or falsity, was relevant in determining whether he placed J.F. in reasonable apprehension of imminent physical injury, we find the trial court did not abuse its discretion. Moreover, we note that the prosecutor's statement in his closing argument helped clarify the purpose of such evidence to the jury and thus, prevented subjecting Summers to "unfair prejudice" and "confusing the issues" before the jury. *See* Ariz. R. Evid. 403.

II.     Hearsay Testimony

**¶11** Summer next argues that the trial court erred by admitting hearsay testimony in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. "We review a trial court's ruling on the admissibility of hearsay evidence for an abuse of discretion." *State v. Bronson*, 204 Ariz. 321, 324, ¶ 14 (App. 2003). However, we review Confrontation Clause issues de novo. *Id.*

A.     Detective Tapia's Testimony

**¶12** Summers first asserts that the court erred by permitting Detective Tapia to testify concerning statements Vanessa made. During the State's redirect, the prosecutor asked Detective Tapia if Vanessa told him that Summers was a "wannabe gang member and just a bully." The trial court overruled Summers' objection to this line of questioning, finding that

defense counsel asked Detective Tapia the same question while cross examining him.

¶13 During cross-examination, defense council elicited the following testimony from Detective Tapia:

> Q. Six documented members of the 79th Swan Love Bloods or the Swan Love Bloods in Arizona, right?
>
> A. Correct.
>
> . . .
>
> Q. And of those six, the information in your report. . .pretty much says [Summers] isn't one of them, right, from Vanessa and what's noted in your report?
>
> A. From speaking with the witnesses?
>
> Q. Yeah.
>
> A. [F]rom what Vanessa said, that's correct.
>
> . . .
>
> Q. And he was described as maybe a bit of a blowhard or bully, but not one of them, right?
>
> A. Correct.

When defense counsel develops testimony about "the subject of information" obtained from another witness, he opens the door for the witness' statements to be admitted into evidence. *State v. Garcia*, 133 Ariz. 522, 525-26 (1982). Because defense counsel opened the door to further inquiry about Vanessa's statements, Summers "may not assign its fruits as error on appeal." *See id.* at 526. Thus, we affirm the trial court's ruling.[3]

---

[3] Summers also contests the admission of statements made by J.F. about his "alleged memory disorder" to Detective Tapia, because Summers was not given an opportunity to confront and cross examine Detective Tapia. The record reflects that the testimony Summers refers to was J.F's direct testimony, was elicited by defense counsel, and contained no hearsay statements. Thus, we do not address this argument.

B.      Officer Silva's Testimony

¶14     Summers next argues the court erred by admitting Officer Silva's testimony. During the State's direct examination, over Summers' objection, Officer Silva testified that several people at the scene of the confrontation told him they witnessed Summers yell "Swan Bloods." The trial court overruled Summers' objection because the statement was "based on the effect of the hearer."

¶15     We agree. "Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue." *State v. Hernandez*, 170 Ariz. 301, 306 (App. 1991). The "Swan Bloods" statement was offered to show its effect on Officer Silva. Thus, it was not hearsay and the trial court properly overruled the objection. *See State v. Strong*, 178 Ariz. 507, 509 (App. 1993) (finding statement made to officer was "admissible to show the effect on the hearer, that is, how the officer first made contact with the appellant").

C.      Daren Howard's Testimony

¶16     Summers also argues the court erred by admitting Daren Howard's following testimony over Summers' objection:

Q.      Okay. Okay. So things are being said. Do you recall anything else that's being said between [J.F.] and [Summers]?

A.      Just, "put the knife down."

Q.      And who was saying that?

A.      [J.F.].

¶17     The trial court did not state its reasoning for overruling Summers' hearsay objection. However, we will affirm the ruling if it was legally correct for any reason. *State v. Chavez*, 225 Ariz. 442, 443, ¶ 5 (App. 2010).

¶18     Although hearsay, we conclude the statement was admissible as an excited utterance under Arizona Rule of Evidence 803(2). The statement was purportedly made after Summers pulled out his knife and J.F. testified that he was afraid of being stabbed at that moment. Thus, the statement was properly admitted as J.F. said it while under "the stress of excitement" of the confrontation with Summers. *See* Ariz. R. Evid. 803(2).

¶19 Also, "[w]hen hearsay evidence is the sole proof of an essential element of the state's case, reversal of the conviction may be warranted." *State v. McGann*, 132 Ariz. 296, 299 (1982). Howard's hearsay testimony was not offered as the sole proof of an essential element; it was simply admitted to show J.F. asked Summers to put the knife down. Thus, we find no error.

III. Prosecutorial Misconduct

¶20 Summers next asserts that his "conviction was obtained as the result of prosecutorial misconduct."[4] Specifically, Summers argues the prosecutor's statement about self-defense was improper. During his closing argument, the prosecutor stated, "Now, this case is maybe different than you were possibly expecting when you came in because you didn't receive a single instruction on self-defense."

¶21 Defense counsel objected on relevance grounds. After calling a bench conference, the trial judge noted that the jury would not be instructed to consider self-defense and instructed the prosecutor to "go right on past it." The prosecutor did not address self-defense in the remainder of his closing argument.

¶22 Because Summers objected to the prosecutor's self-defense statement at trial, we review for harmless error. *See State v. Ramos*, 235 Ariz. 230, 234, ¶ 8 (App. 2014). We will reverse only if there is a "reasonable likelihood that the misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial." *State v. Nelson*, 229 Ariz. 180, 189, ¶ 36 (App. 2012) (internal punctuation and citation omitted). Summers has not demonstrated how the prosecutor's self-defense statement could have impacted the jury's verdict. Moreover, the trial court did not instruct the jury to consider a self-defense theory and there is no evidence that it did while it deliberated. Finding no error, we affirm.

**CONCLUSION**

¶23 We have read and considered counsel's brief and Summers' supplemental brief. We have carefully searched the entire appellate record for reversible error and have found none. *See Clark*, 196 Ariz. at 541, ¶ 49.

---

[4] Summers contends the prosecutor repeatedly made "improper references to [Summers'] alleged gang involvement during direct examination and redirect." Because we concluded that the trial court properly admitted such evidence, we find no misconduct and do not further address this argument. *See supra* ¶¶ 8-10.

All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Summers was represented by counsel at all critical stages of the proceedings. At sentencing, Summers and his counsel were given an opportunity to speak, the court imposed a legal sentence, and Summers received the correct amount of presentence incarceration credit.

**¶24**      Counsel's obligations pertaining to Summers' representation in this appeal have ended. *See State v. Shattuck*, 140 Ariz. 582, 584 (1984). Counsel need do nothing more than inform Summers of the status of the appeal and his future options, unless Counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See id*. at 585. Summers shall have thirty days from the date of this decision to proceed, if he so desires, with an in propria persona motion for reconsideration or petition for review.

**¶25**      For the foregoing reasons, we affirm Summers' convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama