NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ELIAS DEWAYNE JOHNSON, *Appellant*.

No. 1 CA-CR 15-0347
FILED 6-2-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-460997-001 DT
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        Elias Dewayne Johnson appeals his convictions and sentences, arguing the trial court erred in denying his motion for mistrial based on alleged prosecutorial misconduct.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2013, Colorado law enforcement officers Crigler and Ruiz boarded a commercial flight at Phoenix Sky Harbor International Airport before other passengers, escorting prisoners Johnson and Felix Crews from Phoenix to Denver, Colorado.  Each row of the plane had three seats on either side of the aisle.  At the back of the plane, in the last row, Crews was seated by the window, Johnson was seated in the middle, and Ruiz sat by the aisle.  Officer Crigler was seated across the aisle, in the aisle seat.  Both Johnson and Crews sat with their hands cuffed to their waists.

¶3        As soon as he was seated, Johnson became agitated with Crews, insulting him with derogatory remarks.  In an effort to diffuse the tension, Officer Ruiz changed seats with Johnson.  Despite this move, Johnson became more agitated and started to yell at Crews.  Officer Crigler warned Johnson, "[L]isten, you got to calm down or we [are] probably going to have to get off this plane."  The warning apparently infuriated Johnson; he began screaming insults at Officer Crigler "at the top of his lungs."

¶4        At that point, other passengers started to board.  Concerned with the safety of the other passengers, Officer Crigler took Johnson to the rear galley of the plane approximately four feet from their seats, and tried to pin Johnson against the wall while Johnson continued screaming insults and attempted to get away.  In the meantime, Officer Ruiz had gotten up and moved into the aisle, but was unable to assist as he also had to watch Crews, who had remained in his seat.  Johnson threatened Officer Crigler, stating "[I'm] going to have [my] Black Panther buddies come to kill [you],

[and] going to find [you] in Colorado and f--k [you] up." Johnson further threatened, "I'm going to spit in your face, mother f--ker." Officer Crigler advised Johnson not to because otherwise he would be charged. Not heeding the advice, Johnson spit at Officer Crigler's left eye. Concerned about the potential health hazards from Johnson's saliva, Officer Crigler immediately wiped the saliva from his face. The Phoenix Police Department was called for assistance.

¶5        Approximately half an hour later, Phoenix Police Officers Monigan and Heeps arrived, and were briefed by the Colorado officers. Officer Monigan observed Officer Crigler's left eye was red, and Crigler was rubbing it and having difficulty in keeping it open. Johnson eventually calmed down and was taken to the police station. At the police station, Johnson told Officer Monigan he "had something to do with spitting on someone."

¶6        Johnson was indicted on one count of aggravated assault, one count of threatening or intimidating, and one count of disorderly conduct. The first trial ended in mistrial because the State's witness mentioned at trial that Johnson was on parole when he boarded the plane. In the second trial, before the parties delivered their closing arguments, Johnson filed a motion *in limine* to preclude the prosecutor from comparing defense counsel's efforts to the magic acts or feats of deception performed by magician David Copperfield, as apparently had occurred during some of this prosecutor's previous trials. The court denied the motion, observing that such an argument was obviously not intended to impugn defense counsel's ethics, but instead was intended to encourage the jury to not be distracted and to focus on the facts. During the State's closing argument, the prosecutor told the jury David Copperfield had created an illusion in an outdoor magic show near New York Harbor through which he had caused the Statue of Liberty to "disappear." The prosecutor explained that the "disappearance" was merely an illusion, and urged the jury to stay focused and not be distracted. Johnson's counsel repeatedly but unsuccessfully objected to the recitation of this story and, at the end of the closing arguments, moved for a mistrial on the basis that the prosecutor had impugned defense counsel's character. The court denied the motion based on the same reasoning for denying Johnson's motion *in limine*.

¶7        The jury found Johnson guilty on all counts and that he had committed the offenses while on parole. The court sentenced Johnson to five years' imprisonment with 493 days of presentence incarceration credit.

Johnson timely appealed; we have jurisdiction pursuant to Arizona Revised Statutes section 12-2101(A)(1).[1]

**ANALYSIS**

**¶8**        Johnson contends the trial court erred in finding the State's comparison of defense counsel with David Copperfield did not impugn defense counsel's integrity, and in denying his motion for mistrial.  We review the trial court's ruling on a motion for mistrial for abuse of discretion. *State v. Ferguson*, 149 Ariz. 200, 211, 717 P.2d 879, 890 (1986). The defense objected on multiple occasions to what it perceived to be the impugning of defense counsel through the telling of the Copperfield story; we thus "consider alleged trial error under the harmless error standard when a defendant objects at trial and thereby preserves an issue for appeal." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005).

**¶9**        Our case law has consistently held "[a] prosecutor[] ha[s] wide latitude in closing arguments and may argue all reasonable inferences from the evidence." *State v. Lynch*, 238 Ariz. 84, 96, ¶ 28, 357 P.3d 119, 131 (2015); *accord State v. Amaya-Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990).  Moreover, "[c]riticism of defense theories and tactics is a proper subject of closing argument." *Lynch*, 238 Ariz. at 96, ¶ 28, 357 P.3d at 131 (alteration in original).  "[I]t is[, however,] improper to impugn the integrity or honesty of opposing counsel." *State v. Newell*, 212 Ariz. 389, 403, ¶ 66, 132 P.3d 833, 847 (2006).  "Nonetheless, such comments warrant reversal only if a defendant can show a reasonable likelihood that the misconduct could have tainted the jury's verdict." *Lynch*, 238 Ariz. at 96, ¶ 28, 357 P.3d at 131.

**¶10**        Johnson relies on *Newell* in arguing the State's comments were improper to such an extent and degree that Johnson's due process rights were denied.  In *Newell*, the prosecutor stated DNA was "the most powerful investigative tool in law enforcement at th[at] time" and that defense counsel, who had questioned the strength and importance of the DNA evidence in the case, knew the prosecutor's statement was true. *Newell*, 212 Ariz. at 403, ¶¶ 64, 66, 132 P.3d at 847.  The supreme court concluded the latter part of the comments about defense counsel was improper because it insinuated defense counsel was disingenuous in questioning the strength of DNA evidence. *Id.* at ¶ 66.  The supreme court in that same case, however, further concluded the defendant had not been convicted or

---

[1]        Absent material changes after relevant events, we cite a statute's current version.

denied a fair trial on the basis of the comments, and therefore a reversal was not warranted. *Id.* at ¶ 67. The supreme court reached this conclusion on three grounds. First, the trial court instructed the jury that closing arguments were not evidence, and the jury presumably had followed those instructions. *Id.* at ¶ 68. Second, the trial court sustained defense counsel's objection to the comments, and instructed the jury to disregard them. *Id.* at ¶ 69. Finally, the evidence of defendant's guilt was overwhelming, and it was that evidence that influenced the jury to convict the defendant, rather than the offending comments. *Id.* at ¶ 70.

**¶11**        Here, the transcript of the relevant closing argument provides:

> (Prosecutor): . . . . Apparently there is a dispute about whether or not the spit actually happened. Despite the fact that you have heard direct evidence from someone who told you that there was, who has no motivation to decide [sic].
>
> Now what the defendant is trying to do is to keep you away from your main focus. Your main focus is to apply the facts to the law. It's not to decide whether or not Officer Crigler, Officer Ruiz or Officer Monigan are guilty in some type of bad investigation. That is not what you are here to decide, not whatsoever. That is not this case. That is not what this is about. Your main focus is to decide whether or not the facts apply to the law.
>
> Don't be distracted, don't get off in a tangent, when you are back in jury deliberations. The State will use an analysis [sic] to keep, make sure you understand the impact the State focused on what the actual issue is, not being diverted or swayed in some alternative direction that doesn't make any sense.
>
> Now, a few years ago, David Copperfield, you may have heard of him --
>
> (Defense Counsel): Objection, Your Honor. May we approach?
>
> THE COURT: No. Overruled at this point. Go ahead.
>
> (Prosecutor): Now you may have heard of David Copperfield. He's a magician. He kind of makes things disappear and stuff.

So a few years ago what he did is he tried to make the Statue of Liberty disappear. Now everybody knows you can't actually make the Statue of Liberty disappear, can you? No. It's impossible.

What he did was, he got an otter [sic] and they went out near the water, overlooking the Statue of Liberty. He put a pillar on the left side, he put a pillar on the right side. The audience was in the middle. When they walked out in the middle, the water there in they saw a Statue of Liberty. He says, I will make that disappear. What he does, he puts a curtain up. He puts a curtain up, and for about 30, 40 minutes he does his show, he has a routine, he does a magic trick.

(Defense Counsel): Objection, Your Honor. Improper argument.

THE COURT: Overruled.

(Prosecutor): He does a show. What he does after that show is he takes the curtain down. He takes the curtain down, then when the audience is looking out there, there is no Statue of Liberty. It's gone. That is what he told them. So everybody knows you can't actually do that. So how did he do it?

Well, trick was, that the officer [sic] was really sitting on a platform, a circular platform. Maybe you have been to a restaurant here in Phoenix where it turns while you eat.

You don't even realize it because it's moving so slow. They were sitting on a turning platform, that was moving very, very slowly throughout the whole magic show. That by the end of the 30, 40 minutes when the curtain was lifted, they were looking in a completely opposite direction of where the Statue of Liberty was. It was behind them at that point. So of course they didn't see this.

Now what the State is asking you, is to stay focused. Not be distracted, not turned in another direction. Stay focused on the truth. The truth is, the defendant spit in Officer Crigler's face. Don't fall for any magic tricks. We ask --

(Defense counsel): Objection, Your Honor. Improper argument.

THE COURT: Overruled.

(Prosecutor): Ladies and gentlemen, again, don't fall for any distraction. Find the defendant guilty of aggravated assault, threatening or intimidating and disorderly conduct. Thank you.

¶12 During this portion of the argument, defense counsel objected three times: first, when David Copperfield's name was mentioned; second, when the State said "he [David Copperfield] does a magic trick"; third, when the State said "don't fall for any magic tricks." In isolation, those remarks might be interpreted as suggesting defense counsel was playing "magic tricks" trying to fool the jury, and thus impugning defense counsel's integrity. But, when read in context, those remarks did not criticize or impugn defense counsel's ethics. Instead, they were directed at focusing the jury's attention on the main issue of defendant's conduct, and telling them not to be misled by the defense theory that the police investigation was inadequate, or that Officer Crigler had overreacted to the disturbance caused by Johnson, and then conspired with other officers to concoct a story that he was spit on by Johnson. Commenting on defense tactics is allowed in closing argument. *See Lynch*, 238 Ariz. at 96, ¶ 28, 357 P.3d at 131; *State v. Ramos*, 235 Ariz. 230, 233, 237-38, ¶¶ 2-4, 24-25, 330 P.3d 987, 990, 994-95 (App. 2014) (concluding the prosecutor was merely criticizing defense tactics, rather than impugning defense counsel's integrity, when claiming the defense had attempted to raise distractions by focusing on the prosecutor's failure to prove the defendant's ownership of the real property upon which a stripped stolen car was found). Therefore, the trial court did not err in finding that this portion of the argument was fair comment, rather than an attempt to impugn defense counsel's integrity.

¶13 Even assuming the comments objected to were improper, the alleged error would be harmless. First, the trial court had already instructed the jury that the lawyers' closing arguments were not evidence, and there is nothing in the record to suggest the jury did not follow this instruction. Second, the comments were not prejudicial in light of the overwhelming evidence of Johnson's guilt. Officers Crigler and Ruiz testified Johnson spit on Officer Crigler. Their testimony was corroborated by Officer Monigan's observation that Officer Crigler's eye looked red and Crigler appeared to have been rubbing it and had trouble keeping it open, and Officer Monigan's testimony that Johnson admitted he had something

to do with spitting on someone. Accordingly, and on this record, the jury's conviction was based on the overwhelming evidence of Johnson's guilt, rather than the prosecutor's comments, and the trial court did not abuse its discretion in denying Johnson's motion for mistrial.

**CONCLUSION**

¶14        Johnson's conviction and sentencing are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA