NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

AARON PAUL SAMUELS, *Appellant.*

No. 1 CA-CR 17-0242
FILED 2-6-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-135177-001
The Honorable Richard L. Nothwehr, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

**¶1**        This appeal was timely filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969) following Aaron Paul Samuels' ("Samuels") conviction for burglary in the second degree. Samuels' counsel searched the record on appeal and found no arguable question of law that is not frivolous. *See State v. Clark*, 196 Ariz. 530 (App. 1999). Samuels was given the opportunity to file a supplemental brief *in propria persona* and elected to do so. After reviewing the entire record, we find no reversible error and affirm Samuels' conviction and sentence.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        On July 25, 2016 at approximately 11:30 a.m., Noemi was startled when someone began banging on the front door of her home. Almost immediately, she heard someone banging on her neighbor's door. Dustin and Clare (collectively "Dustin") lived there, but were at work. Through her peephole, Noemi saw a maroon pickup truck with two tires in the truck bed parked outside Dustin's house. The banging stopped, but Dustin's dogs continued to bark. Noemi looked through her front window and saw the truck; the engine was running, the passenger door was open, and a man was sitting in the driver's seat looking toward Dustin's front door. Samuels was the driver. Then, a man, later identified as Jesus, ran out of Dustin's house carrying a wooden box, jumped into the truck, and Samuels sped off. Noemi opened her door and saw Dustin's front door was broken and jewelry was lying on the ground outside. She called the police and relayed what occurred, including providing a detailed description of the truck with the two tires in the bed.

---

[1]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citation omitted).

¶3        While on routine patrol, Officer Lloyd received a call of a residential burglary at Dustin's home.  In route, he passed a pickup truck matching the description Noemi provided.  Officer Lloyd immediately made a U-turn to follow the truck and when it turned into a QuickTrip gas station less than one mile from Dustin's home, Officer Lloyd turned on his overhead lights and made a traffic stop.  The truck was registered to and driven by Samuels.  Noemi was transported to the QuickTrip and identified both Samuels and Jesus as the men she saw at Dustin's house.  A large wooden jewelry box was found inside the truck by the center console.

¶4        Dustin was at work when he received a call from police advising that his house had been broken into.  Initially he worried that something had happened to his dogs and then became concerned about his home and possessions.  Dustin came home to find that his front door had been kicked in, the frame was split in half, and jewelry was scattered on the front entryway.  Upon arriving at the QuickTrip where police held Samuels and Jesus, Dustin was shown the wooden jewelry box located inside Samuels' truck.  Dustin identified the jewelry box and several pieces of jewelry as belonging to his wife.  He had purchased the jewelry and jewelry box and it was kept in their master bedroom closet.  Dustin further testified that he did not give anyone permission to enter his house or take his possessions.

¶5        The State charged Samuels with one count of burglary in the second degree, a class 3 felony.  The State alleged Samuels was on probation when the offense was committed; he had three prior felony convictions; and four aggravating circumstances (presence of an accomplice, committed for pecuniary gain, emotional or financial harm to the victim, and multiple felony convictions).

¶6        At the close of the State's evidence, Samuels unsuccessfully moved for a directed verdict pursuant to Arizona Rule of Criminal Procedure 20.  The jury then convicted Samuels as charged.  During the aggravation phase, the jury found three of the four aggravating circumstances (pecuniary gain was not proven). Samuels admitted to three historical prior felony convictions, and the superior court sentenced him as a non-dangerous, repetitive offender to presumptive terms of (1) 11.25 years' imprisonment, with no presentence incarceration credit, for burglary in the second degree; and (2) one year' imprisonment to run consecutively, with 301 days of presentence incarceration credit, for the probation violation.

¶7        We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033(A)(1).

## DISCUSSION

### I.    Sufficiency of Evidence

¶8        Our obligation is to review the entire record for reversible error, *see Clark*, 196 Ariz. at 537, ¶ 30, and we begin our review analyzing whether sufficient evidence supports the jury's verdicts.[2] "The sufficiency of evidence supporting a conviction is a question of law, subject to de novo review." *State v. Denson*, 241 Ariz. 6, 10, ¶ 17 (App. 2016) (citation omitted). "We will reverse a conviction 'only if no substantial evidence supports the conviction.'" *Id*. (citation and internal quotations omitted).

¶9        Samuels argues that insufficient evidence proved he acted with the requisite intent or knowledge to commit burglary in the second degree. Specifically, Samuels contends that Noemi only saw him sitting in the truck, looking around, with the engine running, and the door open; which failed to show his intent to commit a crime. Further, Samuels argues that he did not try to evade Officer Lloyd when he passed him on the street, showing he had no knowledge he was committing a crime.

¶10        "A person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." A.R.S. § 13-1507(A). "Intentionally" or "with intent to" means "that a person's objective is to cause that result or to engage in that conduct." A.R.S. § 13-105(10)(a).

---

[2]        Samuels argues the superior court erred by failing to (1) order a mistrial or grant a new trial because prosecutors "inappropriately prepped" Dustin's testimony, (2) advise Samuels that he had the right to a twelve-person jury, and (3) instruct the jury that it could not convict him of criminal liability as an accomplice if it found that he acted without the requisite mental state. Because Samuels has failed to develop these arguments in any meaningful way, however, we deem them waived and do not address them. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) (failure to develop legal argument waives argument on review); *State v. Carver*, 160 Ariz. 167, 175 ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

"[I]ntent may be inferred from all of the facts and circumstances disclosed by the evidence, and need not be established by direct proof." *State v. Quatsling*, 24 Ariz. App. 105, 108 (1975) (internal citation omitted). Here, Samuels would be criminally accountable for Jesus' conduct if Samuels was Jesus' accomplice in the commission of the burglary at Dustin's home. *See* A.R.S. § 13-303(A)(3). An accomplice is a person "who with the intent to promote or facilitate the commission of an offense" commits any of the following:

> 1. Solicits or commands another person to commit the offense[,]
>
> 2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense[, or]
>
> 3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13-301.

¶11        Evidence at trial showed that Samuels drove his truck to Dustin's home with Jesus as a passenger. Without Dustin's permission, Jesus kicked in Dustin's front door and took his jewelry box, dropping jewelry as he ran out. During that time, Samuels sat in the driver seat of the truck, with the engine running and passenger door open, and looking toward Dustin's front door. When Jesus jumped in the truck, Samuels sped off. When they were pulled over by police less than one mile away from Dustin's home, Samuels was driving his truck and Jesus was his passenger. Samuels' truck matched the description given to police by the witness and Dustin's jewelry and jewelry box were found inside Samuels' truck. The witness identified both Samuels and Jesus as the men she saw at Dustin's home.

¶12        We find that sufficient evidence supports Samuels' conviction. The jury could reasonably conclude, based on all the facts and circumstances, that Samuels intended to aid and/or provide the means or opportunity to Jesus to unlawfully enter Dustin's home to steal his jewelry and jewelry box.

## II.    Prosecutorial Misconduct

¶13        Samuels argues the prosecutor committed misconduct by "deliberately fabricating prejudicial evidence" that (1) Jesus was already

convicted of this offense, therefore Samuels was guilty as his accomplice; and (2) Dustin was caused emotional harm by the burglary.

¶14 When reviewing prosecutorial misconduct, we focus on whether the prosecutor's conduct affected the proceedings in such a way as to deny the defendant a fair trial. *See State v. Ramos*, 235 Ariz. 230, 237, ¶ 22 (App. 2014). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *Id*. (citation omitted).

¶15 Contrary to Samuels assertion, the record reveals that at no time during trial did the prosecutor claim Jesus was convicted of any crime, much less that he was convicted of this offense. Nor did the prosecutor claim that Jesus was even arrested or charged for this offense. As for the emotional harm caused to the victim, Dustin testified that he felt vulnerable because someone was in his home and easily kicked in his front door. He feels less secure now and always looks for ways to better protect himself. The superior court specifically found that Dustin's testimony was "absolute[ly] credible . . . as to the impact on him when he came home to see his home opened up, seeing the jewelry laying on the ground, going out to where [Samuels'] truck had been . . . [a]nd every one of the jurors found that to be an aggravating factor."

¶16 We find no misconduct, much less any conduct, that denied Samuels a fair trial.

## III. Ineffective Assistance of Counsel

¶17 Samuels next argues his constitutional rights were violated because his trial counsel did not call witnesses to vouch for his credibility or present his mental health history of ADHD and bipolar disorder. Because Samuels elected to proceed to trial with counsel, his claim is essentially for ineffective assistance of counsel which may only be raised in a petition for post-conviction relief. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) ("[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings . . . [and] will not be addressed by appellate courts regardless of merit."). We therefore express no opinion as to the merits of this claim.

## IV. Jury Coercion and Motion for Mistrial

¶18 Samuels next argues the superior court erred by coercing the jury to reach a verdict when it was deadlocked and leaving juror 3 "with a

clear but wrong impression that being undecided was inappropriate coercing the verdict."

**¶19**     "Jury coercion exists when the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors, or when the trial judge encourages a deadlocked jury to reach a verdict[.]" *State v. Davolt*, 207 Ariz. 191, 213, ¶ 94 (2004) (internal quotation marks and citations omitted). "What conduct amounts to coercion is particularly dependent upon the facts of each case." *State v. Roberts*, 131 Ariz. 513, 515 (1982). We review the superior court's response to a jury question for abuse of discretion. *State v. Ramirez*, 178 Ariz. 116, 126 (1994).

**¶20**     Here, soon after the jury began deliberations, it returned with the question, "Is a hung jury an option?" The superior court and counsel discussed the appropriate response, and the court answered, "Please review the instructions previously given to you. Any verdict that you reach must be unanimous." Shortly thereafter, the jury found Samuels guilty of burglary in the second degree. The jury was polled and each juror, including juror 3, stated in open court that it was his/her true verdict. We find the court's instruction was appropriate and did not in any way coerce the jury to reach a verdict. *See* Ariz. R. Crim. P. 22.3 (trial court may give appropriate additional instructions after jury has begun deliberations).

**¶21**     Nevertheless, Samuels claims that when the jury delivered its verdict, juror 3 "looked sad and teary-eyed" and when polled "seemed hesitant to agree that the verdict was her verdict." Therefore, he argues the superior court erred in denying his motion for a mistrial.

**¶22**     "A verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered." *State v. Kiper*, 181 Ariz. 62, 68 (1994) (citation omitted). "Absent an abuse of discretion, we will not overturn the trial court's denial of a motion for mistrial." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000) (citation omitted). "The trial judge's discretion is broad because he is in the best position to determine whether the evidence will actually affect the outcome of the trial." *Id.* (citations and internal punctuation omitted).

**¶23**     After the jury was polled and then discharged, juror 3 remained and asked to speak with the judge. As directed, court personnel asked juror 3 to leave because it was "inappropriate" for the judge to speak with any jurors. At the next post-trial hearing, Samuels moved for mistrial because juror 3 looked "teary-eyed" and "a little reluctant." The court

denied Samuels motion finding that when asked if it was her true verdict, juror 3 "actually respond[ed] in the affirmative[.]" Based on the record, the verdict was final and no evidence reveals that any jury misconduct took place justifying a mistrial or new trial. *See* Ariz. R. Crim. P. 24.1(c). The superior court did not abuse its discretion in denying Samuels' motion for a mistrial.

## V.     Fundamental Error Review

**¶24**         Further review reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). Sufficient evidence was presented upon which the jury could determine beyond a reasonable doubt that Samuels committed burglary in the second degree as alleged in the indictment. All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The superior court properly denied Samuels' motion for directed verdict. So far as the record reveals, Samuels was represented by counsel at all stages of the proceedings and was present at all critical stages, including the entire trial and the verdict. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages) (citations omitted); *State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). The jury was properly comprised of eight jurors with two alternates, and the record shows no evidence of jury misconduct. *See* Ariz. Const. art. 2, § 23; A.R.S. § 21-102 (jury shall consist of eight persons for any criminal case except for case in which sentence of death or imprisonment for thirty years or more is authorized); Ariz. R. Crim. P. 18.1(a). The court properly instructed the jury on the elements of the charged offense, including the requisite mental state, the State's burden of proof, and Samuels' presumption of innocence. At sentencing, Samuels was given an opportunity to speak, and the court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. *See* Ariz. R. Crim. P. 26.9, 26.10. The court received a presentence report and the sentence imposed was within the statutory limits. *See* A.R.S. § 13-703(J).

## CONCLUSION

**¶25**         Based on the foregoing, we affirm Samuels' conviction and resulting sentence.

**¶26**         After the filing of this decision, defense counsel's obligation pertaining to Samuels' representation in this appeal will end. Defense counsel need do no more than inform Samuels of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue

appropriate for submission" to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the Court's own motion, Samuels has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Further, Samuels has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA